FRANCHINO v FRANCHINO

Docket No. 244878. Submitted April 20, 2004, at Lansing. Decided July 29, 2004, at 9:05 A.M.

Robert A. Franchino brought an action in the Clinton Circuit Court against his father, Richard Franchino, seeking damages under MCL 450.1489 for the plaintiff's removal from the board of directors of, and employment by, Franchino Mold & Engineering Company, a closely held corporation. The corporation intervened as a defendant. The court, Randy L. Tahvonen, J., granted summary disposition for the defendants on the basis that MCL 450.1489 does not protect a shareholder from removal from the corporate board or guarantee his employment with the corporation because the statute only protects a shareholder's interest as a shareholder, not as an employee or director. The court also denied the plaintiff's motion to file a third amended complaint, ruling that the claims in the proposed amended complaint would be futile or unduly prejudicial to the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. MCL 450.1489 gives a shareholder relief when oppressed by the majority shareholder or the management in a close corporation. The statute does not allow shareholders to recover for harm suffered in the shareholder's capacity as an employee or a board member. The removal from the board of directors, the termination of the employment, the loss of his share of the corporate earnings, which had been paid as salary, and the amendment of the bylaws of the corporation by a new board after his removal are injuries not cognizable under MCL 450.1489 because they do not relate to the plaintiff's interests as a shareholder.

2. The trial court did not abuse its discretion in denying the plaintiff's motion to file a third amended complaint, which sought relief for the termination of the plaintiff's employment, his removal from the board, and alleged shareholder oppression. Amendment would be futile inasmuch as the claims do not involve harm suffered as a shareholder or the claims would be unduly prejudicial to the defendants because of the delay in bringing the claims and the lack of reasonable notice of the claims.

Affirmed.

1. CORPORATIONS — CLOSE CORPORATIONS — SHAREHOLDER RIGHTS — SHARE-
    HOLDER PROTECTIONS.

> Although shareholder rights are protected by statute in close corpo-
> rations, the protections do not prevent removal of a minority
> shareholder from the board of directors or the termination of his
> employment by the corporation (MCL 450.1489).

2. MOTIONS AND ORDERS — MOTION TO AMEND COMPLAINT — DENIAL.

> Motions to amend a complaint should be denied only for specific
> reasons such as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by amendments
> previously allowed, undue prejudice to the opposing party by virtue
> of allowance of the amendment, and futility of the amendment.

*James D. Adkins* and *Warner Norcross & Judd LLP*
(by *John J. Bursch*) for the plaintiff.

*Dietrich & Cuzydlo, PLLC* (by *Robert W. Dietrich* and
*Charles R. Cuzydlo*), for the defendant.

Before: ZAHRA, P.J., and SAAD and SCHUETTE, JJ.

PER CURIAM. Plaintiff Robert A. Franchino appeals
the trial court's grant of summary disposition under
MCR 2.116(C)(8) and (C)(10) in favor of his father,
defendant Richard Franchino, and intervening defen-
dant Franchino Mold and Engineering Company
(FMEC). Plaintiff also appeals the trial court's denial of
his motion to amend the complaint. This case raises an
issue of first impression under Michigan law: Whether
MCL 450.1489 creates a cause of action for a share-
holder in a close corporation when the shareholder is
removed from the corporation's board of directors and
his employment with the close corporation is termi-
nated. We conclude that MCL 450.1489 does not protect
a shareholder from removal from the corporate board or
guarantee his employment with the corporation. MCL
450.1489 only protects a shareholder's interest as a
shareholder. Defendant's decision to fire plaintiff and

remove him from the board of directors did not affect plaintiff's interests as a shareholder under MCL 450.1489. Therefore, the trial court properly dismissed plaintiff's cause of action and did not abuse its discretion in concluding that the claims in the proposed amended complaint were either futile or prejudicially delayed. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1974, plaintiff began his employment at FMEC. Four years later, plaintiff and defendant signed an employment contract in which the parties agreed that plaintiff could only be terminated by the unanimous agreement of FMEC's board of directors. From 1978 until 2001, plaintiff and defendant were the only members of the board of directors as well as the only shareholders, with plaintiff holding thirty-one percent and defendant holding sixty-nine percent.[1]

Plaintiff and defendant were also parties to two stock purchase agreements (also referred to as the "buy-sell" agreements) signed in the early 1980s, one of which related to a family-owned company called Franchino, Inc., the other of which related to FMEC. Under the FMEC buy-sell agreement, defendant was required to offer his shares first to the corporation, then to plaintiff, before the shares could be offered to anyone else, including defendant's daughters. The Franchino, Inc., buy-sell agreement required defendant to offer his shares to his children in proportion to their current holdings.

According to FMEC employees, the relationship between plaintiff and defendant deteriorated over the

---

[1] Plaintiff's two sisters, Lois Franchino and Phyllis Hetherington, also worked for FMEC. Although neither was a shareholder in FMEC, both held shares in Franchino, Inc.

years they worked together. Arguments over equipment and personnel became more frequent, and witnesses testified that they heard defendant fire plaintiff more than once. Lois Franchino confirmed that defendant had talked about firing plaintiff in recent years and testified that she had begged defendant not to take action against plaintiff until their mother passed away, which she did in September 2000.

In early 2001, defendant became concerned that his estate would be "cannibalized" by estate taxes if the buy-sell agreements remained in place. To address this concern, attorney Robert Dietrich suggested forming Franchino Holdings in January 2001. On May 7, 2001, plaintiff received a letter from Dietrich stating that defendant sought to set aside the 1982 buy-sell agreement for Franchino, Inc., and that if plaintiff was unwilling to set the agreement aside, defendant was prepared to have it set aside by operation of law. A second letter explained that defendant desired the agreement set aside "for estate planning purposes," specifically, to achieve a "more equitable distribution of his estate" in light of changes in the tax structure and business assets since the agreement was signed. According to Dietrich's letter, defendant wanted "unrestricted freedom to redistribute his shares among [the] family" and planned to "merge Franchino Inc. into a new entity" if the agreement was not set aside by mutual consent.

Defendant and his two daughters filed articles of incorporation for Franchino Holdings, Inc., on July 6, 2001. On August 1, 2001, defendant gave notice that a special shareholder meeting for shareholders in Franchino, Inc., would be held on August 14, 2001, with the stated purpose being to "discuss the merger of Franchino, Inc. with Franchino Holdings, Inc."

The tensions between the parties worsened in the middle of August 2001 after plaintiff yelled obscenities at FMEC employee Timothy Vascillion[2] for not having the correct paperwork before beginning a welding project. On August 17, 2001, defendant orally fired plaintiff, then sent a letter four days later confirming that his firing would be effective September 16, 2001, and instructing plaintiff to return any FMEC property he had in his possession.

Defendant maintained that his decision to fire plaintiff was the result of disagreements over equipment purchases; plaintiff's refusal to listen to, talk to, or take direction from defendant; plaintiff repeatedly walking out of FMEC meetings; and plaintiff's desire to fire what defendant considered to be some of FMEC's most valuable employees. Defendant stated that the Vascillion incident was the "straw that broke the camel's back." However, two FMEC employees testified that defendant had threatened to fire plaintiff if he pursued his plan to sue defendant, and one employee testified that defendant had said he wanted to fire plaintiff in order to terminate the buy-sell agreement and reconfigure his estate plan.

On August 20, 2001, plaintiff filed suit to prevent defendant from merging Franchino, Inc., with Franchino Holdings, and the trial court granted a preliminary injunction prohibiting the merger. On September 5, 2001, defendant sent a follow-up letter confirming that plaintiff had been fired, demanding that plaintiff vacate FMEC premises by noon of that day, and instructing him to return only once before September 16, 2001, to return company property. The letter indicated that plaintiff would continue to receive his salary until September 16, 2001.

---

[2] The cover page of Mr. Vascillion's deposition incorrectly gives his name as "Tom."

On September 10, 2001, plaintiff filed a one-count complaint alleging that defendant breached his fiduciary duties to FMEC by terminating plaintiff's employment in retaliation for plaintiff having sued defendant over the buy-sell agreement. FMEC moved to intervene, and the trial court granted the motion.

On September 15, 2001, with the aid of his attorneys Robert Dietrich and Charles Cuzydlo, defendant held a special shareholder meeting to remove plaintiff from the board of directors and to amend FMEC's bylaws. Defendant appointed Cuzydlo to act as secretary, then he appointed as proxies Dietrich's wife, Lynn Dietrich, and Cuzydlo's friend, Jonathan Harmon.

Working from a script Cuzydlo prepared, Harmon moved to remove plaintiff from FMEC's board of directors, then moved to amend FMEC's bylaws to allow between one and five directors, who need not be shareholders and who would be elected to specific terms, and also to specify that all shareholder meetings would be chaired by FMEC's president. Lynn Dietrich seconded these motions and all three were adopted. On September 20, 2001, defendant held a board of directors meeting at which he moved to fire plaintiff, seconded his own motion, and "unanimously adopted" the motion himself.

In January 2002, plaintiff amended the complaint to include allegations of willfully unfair and oppressive conduct, wrongful discharge, intentional interference with contractual relations, and negligent interference with contractual relations. Plaintiff also sought to have defendant removed from the board of directors. After the amended complaint was filed, a conflict panel of this Court decided *Estes v Idea Engineering & Fabricating, Inc,* 250 Mich App 270; 649 NW2d 84 (2002), which held that MCL 450.1489 created a separate, independent

cause of action for minority shareholder oppression in closely held corporations. Thereafter, the trial court allowed plaintiff to file a second amended complaint that alleged a cause of action for minority shareholder oppression under MCL 450.1489, and plaintiff voluntarily dismissed the other claims.

The second amended complaint alleged that defendant "used his position as the majority shareholder" of FMEC "in a willfully unfair and oppressive manner" by terminating plaintiff's employment in violation of the employment contract, removing plaintiff from the board of directors, and amending the bylaws of the corporation. Plaintiff alleged that these actions "destroyed the harmonious management of the corporation's affairs and defeated Plaintiff's reasonable expectations" of remaining employed, being on the board of directors, and continuing to share in the corporation's earnings.

Both defendant and intervening defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and argued at the motion hearing that plaintiff had ignored that portion of MCL 450.1489(3) that defines oppressive conduct as that which affects the interests of the shareholder as a shareholder, not as an employee or board member. Plaintiff responded that because shareholders in close corporations have reasonable expectations of participating in management and of receiving their share of corporate dividends through their salary, defendant's oppression of these interests did affect him in his capacity as a shareholder.

After hearing the arguments, the trial court clarified that the only theory of liability plaintiff had put forward was liability under MCL 450.1489. The trial court noted that while similar statutory provisions from other states allowed shareholders to sue for damages sus-

tained as a director or officer of the corporation, Michigan's amended statute specified that it applied to conduct that affected the shareholder "as a shareholder," a difference the trial court refused to ascribe to "mere chance." Reasoning that a person in a close corporation is not necessarily an employee, director, or officer, but is, of necessity, a shareholder, the trial court concluded that MCL 450.1489 applied to protect the interests of shareholders only in their capacity as shareholders.

The trial court agreed that defendant's conduct "could be deemed to be oppressive" when viewed in a light most favorable to plaintiff; however, it concluded that this conduct did not affect plaintiff's interests as a shareholder. Of the plaintiff's "three expectations that were disappointed: 1) lifetime employment; 2) a position on the board; [and] 3) a share of the profits," the trial court concluded that a right to lifetime employment was not part of being a shareholder, nor was holding a board position, because the majority owner could change the board's membership if the change is permitted by the corporation's articles. With respect to plaintiff's right to receive a share of the profits, the trial court noted that there had been "no suggestion that there's been a dispro [sic]—distribution of profits inconsistent with that that was utilized during the course of the operation of the corporation before the alleged oppressive conduct." Accordingly, the trial court concluded that no "diminution in the distributions has been suggested that would warrant the relief."

The trial court then addressed the question whether, although plaintiff had no right to lifetime employment, a board position, and a share of the profits beyond what had been distributed, plaintiff might nonetheless be able to recover under a theory that his reasonable expectations to these interests had been violated. While

the trial court acknowledged that there was "clearly factual support for a jury to determine that [plaintiff] did have such an expectation," it concluded that, although the "reasonable expectations" test had been discussed in Michigan cases, it had not been adopted. The trial court reasoned that the "reasonable expectations alleged . . . do not inure to the plaintiff as a shareholder" and declined to adopt the test. Further, the trial court determined that defendant's alleged conduct did not affect plaintiff's rights or reasonable expectations as a shareholder as required under MCL 450.1489 and granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10).

On October 17, 2002, plaintiff filed a motion to amend the complaint. Count I of the proposed third amended complaint again alleged a violation of MCL 450.1489, but claimed fifteen additional allegations of oppression in retaliation for plaintiff's failure to relinquish his rights under the stock purchase agreement. Plaintiff also sought to add a wrongful discharge claim, alleging that defendant fired plaintiff in violation of their employment contract and in retaliation for filing suit to protect his rights in the stock purchase agreement.

After hearing oral arguments on the motion to amend, the trial court noted that plaintiff had been allowed multiple amendments, lengthy discovery had been completed, case evaluation had taken place, jury charges had been submitted, and the claims and theories had been provided to the trial court. The trial court observed that plaintiff had not alleged the breach of a stock purchase agreement or wrongful termination, but only oppression of a minority shareholder under MCL 450.1489, and "[a]ll of the pleadings, all of the discovery, all of the submissions to the Court . . . focused upon this

question of reasonable expectations." Concluding that there had been undue delay and that any further shareholder oppression claims would be futile, the trial court denied plaintiff's motion to amend. Plaintiff appeals that order, as well as the order granting summary disposition.

II. EXTENT OF "SHAREHOLDER INTERESTS" UNDER MCL 450.1489

A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). We review de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116 (C)(8) "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief." *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). To successfully oppose a motion under MCR 2.116(C)(10), the nonmoving party must set forth evidence of specific facts showing that a genuine factual issue exists. *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999). In evaluating the motion, the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4); *Quinto, supra* at 362.

As an initial matter, defendant maintains that plaintiff should be estopped from arguing that his lost wages and benefits were part of his corporate earnings because plaintiff never claimed a loss of corporate dividends in the pleadings or before the trial court. However, this argument misapprehends the thrust of plaintiff's argument. Plaintiff contends that individuals generally join close corporations not for dividends, but for employment and a share of the profits, which are often paid through salaries and bonuses. Further, plaintiff says that while the parties' salaries averaged approximately $500,000 a year, plaintiff received only $3,100 a year in dividends. Because plaintiff's attorney raised the question whether plaintiff's firing affected his right, as a shareholder, to receive his full measure of the corporate earnings, it was adequately preserved for our review. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).

Plaintiff sued defendant pursuant to MCL 450.1489(1), which provides in relevant part:

> A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder.

This statute was amended by 2001 PA 57 to define "willfully unfair and oppressive conduct" as

> a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the *shareholder as a shareholder*. The term

> does not include conduct or actions that are permitted by
> an agreement, the articles of incorporation, the bylaws, or
> a consistently applied written corporate policy or proce-
> dure. [MCL 450.1489(3) (emphasis added).]

Plaintiff argues that his removal from the board of directors and from his employment at FMEC constituted oppression of his rights as a shareholder because he received the bulk of his share of the corporate profits through his salary and expected to participate in FMEC's management. This argument raises an issue of first impression under Michigan law: Are a shareholder's employment with the company and membership on the board of directors shareholder interests protected by MCL 450.1489? We review de novo questions involving statutory interpretation. *Oakland Co Bd of Rd Comm'rs v Michigan Property & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The first step in determining legislative intent is to review the language of the statute. *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999). If the statute is unambiguous, the Legislature is "presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible." *Id*. However, "[w]hen reasonable minds may differ with regard to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute." *Chop v Zielinski*, 244 Mich App 677, 680; 624 NW2d 539 (2001). When the provisions in question are part of the Business Corporation Act, MCL 450.1101 *et seq*., they must be construed liberally and "applied to promote its underlying purposes and poli-

cies," which include giving "special recognition to the legitimate needs of close corporations." MCL 450.1103; *Estes, supra* at 278.

It is generally acknowledged that, in close corporations, shareholders often work for the corporation, and corporate dividends are often paid in the form of a salary. See O'Neal & Thompson, 1 O'Neal's Close Corporations (3d ed), § 6.02, ch 6—pp 2-4. See also *Exadaktilos v Cinnaminson Realty Co, Inc*, 167 NJ Super 141; 400 A2d 554 (1979). Likewise, shareholders in close corporations are often members of the corporation's management. See *Estes, supra* at 281, quoting *Baks v Moroun*, 227 Mich App 472, 503; 576 NW2d 413 (1998) (HOEKSTRA, J., dissenting). However, employment and board membership are not generally listed among rights that automatically accrue to shareholders. Shareholder's rights are typically considered to include voting at shareholder's meetings, electing directors, adopting bylaws, amending charters, examining the corporate books, and receiving corporate dividends. See 12 Fletcher Cyclopedia Corporations. ch 58, § 5717, p 22.

Despite the fact that employment and board membership are not considered shareholder rights, termination of a minority shareholder's employment or board position has been recognized as a form of oppression.[3] To remedy this situation, some states have enacted statutes that explicitly protect the rights of minority shareholders in their capacities as employees and directors. In New Jersey, for example, the statutory provision analogous to MCL 450.1489 specifies that a court

---

[3] Indeed, in one leading commentator's assessment, termination of a minority shareholder's employment or board position is much more common than infringement of the rights of a shareholder as a shareholder. See 2 O'Neal, § 9.27, p 9-165.

may grant relief if the majority shareholders "acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, *directors, officers, or employees.*" NJ Stat Ann 14A:12-7(1)(c) (emphasis added). Similarly, South Carolina statutory law provides relief for a minority shareholder who is oppressed "whether in his capacity as a shareholder, director, or officer of the corporation . . . ." SC Code Ann 33-14-300(2)(ii). See also 805 Ill Comp Stat 5/12.56 (providing remedies for oppression of minority shareholder "whether in his or her capacity as a shareholder, director, or officer").

In states where the applicable statutes do not specifically protect minority shareholders in their capacities as employees and directors, some courts have nonetheless extended protection to minority shareholders when they suffered harm in those capacities. For example, New York's oppression statute provides for relief if the "directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders." NY Bus Corp Law § 1104-a(a)(1). Despite the absence of language explicitly protecting the interest of minority shareholders as employees or directors, New York courts have extended protection where these interests were oppressed by the majority. See *In re Topper*, 107 Misc 2d 25; 433 NYS2d 359 (1980).

By contrast, Michigan's statute neither explicitly protects minority shareholders' interests as employees or directors, nor is it silent on the issue. Rather, the Legislature amended the statute to explicitly state that minority shareholders could bring suit for oppression only for conduct that "substantially interferes with the interests of the shareholder *as a shareholder.*" MCL 450.1489(3) (emphasis added). To construe the statute

in a way that allows plaintiff to sue for oppression of his interests as an employee and director would ignore the Legislature's decision to insert the phrase "as a shareholder" and render the phrase nugatory, which is contrary to a fundamental rule of statutory construction. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003); *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 617; 664 NW2d 165 (2003). Accordingly, we hold that the trial court correctly concluded that MCL 450.1489(3) does not allow shareholders to recover for harm suffered in their capacity as employees or board members.

### D. REASONABLE EXPECTATIONS TEST

By holding that MCL 450.1489(3) limits a shareholder's recovery to damages sustained in his capacity as a shareholder, we also reject plaintiff's invitation to define the term "oppression" to include "conduct that defeats the reasonable expectations of a minority shareholder." As defendant correctly notes, this Court has never applied the reasonable expectations test in a published opinion, although it has mentioned it. In *Estes*, a conflict panel of this Court adopted the dissent of Judge HOEKSTRA in *Baks*, which stated in part that while "Michigan courts have yet to consider what action constitutes 'willfully unfair and oppressive conduct' in suits brought pursuant to [MCL 450.1489], several other states' courts have applied an objective test based on the shareholder's reasonable expectations." *Estes, supra* at 282, quoting *Baks, supra* at 505 (HOEKSTRA, J., dissenting). However, neither Judge HOEKSTRA's dissent nor the conflict panel in *Estes* advocated adoption of the "reasonable expectations" standard.

Plaintiff observes that a panel of this Court made reference to the reasonable expectations test in *Lardner*

*v Port Huron Golf Club*[4] and determined that the plaintiff would not have been able to recover under the reasonable expectations test because the plaintiff's expectations were unreasonable. However, *Lardner* predates our Legislature's enactment of MCL 450.1489(3) and is not binding precedent.[5] Accordingly, there is no basis in current Michigan law for applying the reasonable expectations test for shareholder oppression.[6]

Courts in other jurisdictions have generally refused to adopt the reasonable expectations test for oppression if the applicable state statute defines oppression in terms of the majority's conduct rather than the effect of that conduct on the minority. For example, in *Kiriakides v Atlas Food Systems & Services, Inc*, 343 SC 587; 541 SE2d 257 (2001), the plaintiff sued under a statutory provision permitting dissolution if "the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, fraudulent, oppressive, or unfairly prejudicial either to the corporation or to any shareholder (whether in his capacity as a shareholder, director, or officer of the corporation)." SC Code Ann 33-14-300(2)(ii).

In declining to adopt the reasonable expectations test, the *Kiriakides* court observed that "[a]lthough several jurisdictions have adopted 'reasonable expecta-

---

[4] *Lardner v Port Huron Golf Club*, unpublished opinion per curiam of the Court of Appeals, issued August 4, 1994 (Docket Nos. 138038, 139092).

[5] See MCR 7.215(C)(1) (unpublished opinions are not precedentially binding).

[6] We note that at least one Michigan commentator has militated against adoption of this test for various policy reasons. See Bruno, *"Reasonable expectations"—A primer on an oppressive standard*, 71 Mich B J 434 (1992). However, because we conclude that MCL 450.1489 is incompatible with the reasonable expectations test, we will not address the substantive considerations on the merits.

tions' as a guide to the meaning of 'oppression,' it has been noted by one commentator that 'no court has adopted the reasonable expectations test without the assistance of a statute.' " *Id.* at 601. Noting that "section 33-14-300 does not place the focus upon the 'rights or interests' of the complaining shareholder but, rather, specifically places the focus upon the actions of the majority," the court concluded that "a 'reasonable expectations' approach is simply inconsistent with our statute." *Id.* at 600. Accordingly, the court "decline[d] to adopt such an expansive approach to oppressive conduct in the absence of a legislative mandate." *Id.* at 602.[7]

We find the reasoning in *Kiriakides* persuasive. MCL 450.1489, like the analogous South Carolina provision, "does not place the focus upon the 'rights or interests' of the complaining shareholder but, rather, specifically places the focus upon the actions of the majority." *Kiriakides, supra* at 600. Furthermore, as the trial court here pointed out, even if plaintiff's reasonable expectations should play some role in determining whether oppressive conduct occurred respecting plaintiff's interests as a shareholder, the limiting nature of MCL 450.1489(3) prevents the reasonable expectations test from extending the protections of MCL 450.1489 to interests other than shareholder interests.

Applying the above-discussed legal principles to the facts presented here, we conclude that the trial court properly granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(8) and (C)(10). Plaintiff

---

[7] By contrast, the North Carolina Supreme Court adopted the reasonable expectations test on the basis of a statute allowing dissolution where "reasonably necessary for the protection of the rights or interests of the complaining shareholder." See *Meiselman v Meiselman*, 309 NC 279, 298; 307 SE2d 551(1983), quoting NC Gen Stat 55-125(a)(4).

alleged only that defendant engaged in shareholder oppression under MCL 450.1489 by (1) terminating plaintiff's employment, (2) removing plaintiff from the board of directors, and (3) amending the bylaws of the corporation. Plaintiff's evidence related to the harm he suffered in his capacity as an employee and as a board member once he was terminated from those positions. However, as a matter of law, these facts do not implicate plaintiff's interests as a shareholder and, accordingly, are not material to his claim under MCL 450.1489. MCL 450.1489 only gives rise to a cause of action in cases where a minority shareholder suffered oppression in his capacity as a shareholder.[8]

### III. DENIAL OF MOTION TO AMEND

Plaintiff also argues that the trial court erred in denying his motion to amend the complaint. We review denials of motions for leave to amend pleadings for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997).

Motions to amend should be denied only for specific reasons such as " '[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated

---

[8] Plaintiff also argues that MCL 450.1489 should protect him against defendant's attempt to force him to give up his rights in the stock purchase agreement and should also protect his right, as a shareholder, to enforce the proper procedures for conducting special shareholder meetings. However, first, plaintiff did not allege that his rights in the stock purchase agreement were directly violated, but only indicated that defendant's decision to fire plaintiff was motivated by the desire to force plaintiff to give up his rights in that agreement. Defendant's decision to fire plaintiff is itself not actionable under MCL 450.1489, and defendant's motivation for firing plaintiff is irrelevant. Second, as plaintiff himself acknowledges, he did not raise the issue regarding special meeting procedures except in his motion to amend. Therefore, we will confine our treatment of that issue to that portion of the opinion relating to the motion to amend.

failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility . . . .' " *Id.* at 658, quoting *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973). The trial court should specifically state its reason for denying a motion to amend on the record. *Weymers, supra* at 659, citing *Fyke, supra* at 656-657.

Here, the trial court explained that

> the delay in asserting those claims in this lawsuit has so colored discovery, case evaluation, and trial preparation that to permit amendment at this juncture is, in essence, to create an entirely new lawsuit in the guise of this pre-existing case and require discovery anew, evaluation anew, trial preparation anew. If that's necessary, that ought to be conducted in the context of a subsequent, separate lawsuit, particularly with regard to the wrongful discharge issue. . . . I'm satisfied that, first, amendment at this juncture would involve undue delay. I'm satisfied that amendment would be futile.

Plaintiff sought to add fifteen separate theories under which he could recover for shareholder oppression under MCL 450.1489. With respect to plaintiff's claims that defendant violated several statutory and bylaw provisions relating to the procedures for calling special meetings, the trial court noted, and plaintiff acknowledges, that the injury alleged in these claims is plaintiff's "removal from the board of directors, the termination of his employment and the loss of his share of the corporate earnings." However, these injuries are not cognizable under MCL 450.1489 because they do not relate to plaintiff's interests as a shareholder. Accordingly, the trial court did not abuse its discretion in determining that adding these claims would be futile. See *Weymers, supra* at 658.

Similarly, subparagraphs (e)-(h), (j), (l), and (m) of the proposed third amended complaint attempt to allege, in various ways, that plaintiff suffered injuries to his rights as a shareholder because he would not give up his rights in the stock purchase agreement. Again, however, the underlying basis of these claims is that plaintiff's employment was terminated, allegedly in retaliation for this refusal. Plaintiff's termination, regardless of its motivation, does not relate to plaintiff's interests as a shareholder. The trial court did not abuse its discretion in determining that adding these claims would also be futile. See *Weymers, supra* at 658.

Plaintiff also sought to add four claims unrelated to his termination; these include the following contentions: defendant (1) siphoned off corporate earnings by overcompensating himself and his two daughters, (2) depressed the value of plaintiff's stock, (3) appropriated FMEC assets and employee resources for his personal use, and (4) "allow[ed] himself and his daughters to continue to receive substantial benefit from [FMEC] as a result of his ownership." These four claims were not alleged in plaintiff's second amended complaint. Plaintiff maintains that the facts to support these allegations were before the trial court and further argues that the trial court improperly denied the motion on the basis of delay without a further finding that the delay was prejudicial or that the amendment was offered in bad faith. We disagree.

It is true that delay alone does not justify denying a motion to amend. See *id.* at 659. However, "a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id.* Actual prejudice results when an amendment prevents the opposing party from receiving a fair trial. *Id.* As the *Weymers* Court clarified,

> a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id.* at 659-660.]

The four new claims brought under MCL 450.1489 fit this description. The trial court did not abuse its discretion in denying plaintiff's motion to amend.

Whether the denial was justified with respect to plaintiff's wrongful termination claim is somewhat less clear. At first blush, the notion that there was inadequate notice that plaintiff might bring a wrongful termination claim seems somewhat implausible. Plaintiff's initial complaint alleged that defendant breached his fiduciary duty by wrongfully discharging plaintiff, the first amended complaint contained a wrongful discharge allegation based on breach of contract, and the basis on which plaintiff claimed oppression under MCL 450.1489 in the second amended complaint was, in part, the termination of plaintiff's employment in violation of the employment contract. Moreover, much of the deposition testimony elicited during discovery directly · pertained to defendant's motives in firing plaintiff.

However, when the trial court granted plaintiff leave to file his second amended complaint, plaintiff agreed to voluntarily dismiss his wrongful discharge claim, and it was clear that the only theory on which plaintiff planned to proceed was shareholder oppression under MCL 450.1489. Accordingly, defendants had little reason to expect that plaintiff would resuscitate the wrongful discharge claim just before trial, which supports the trial court's decision to deny the motion to amend.

As noted, the trial court's decision is reviewed for an abuse of discretion, which " 'involves far more than a difference in judicial opinion.' " *Kurtz v Faygo Beverages, Inc,* 466 Mich 186, 193; 644 NW2d 710 (2002), quoting *Alken-Ziegler, Inc v Waterbury Headers Corp,* 461 Mich 219, 227; 600 NW2d 638 (1999), citing *Williams v Hofley Mfg Co,* 430 Mich 603, 619; 424 NW2d 278; 430 Mich 603; 424 NW2d 278 (1988). To constitute an abuse of discretion, the result must be so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Dep't of Transportation v Randolph,* 461 Mich 757, 768; 610 NW2d 893 (2000) (citations omitted). While reasonable minds could disagree with the result the trial court reached, its decision to deny the motion to amend to reassert the wrongful discharge claim does not constitute an abuse of discretion.

Affirmed.