# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

MRG LAKE VILLA, LLC,

        Plaintiff/Counter-
        Defendant/Appellee,

v

ARROWOOD HOME RENTALS, LLC, also
known as ARROWOOD MOBILE HOMES, LLC,
and also known as ARROWOOD MOBILE
HOMES SALES,

        Defendant,

and

KENNETH C.  BURNHAM,

        Defendant/Counter-
        Plaintiff/Appellant.

UNPUBLISHED
January 24, 2017

No.   329053
Oakland Circuit Court
LC No.   2014-142084-CK

---

MRG LAKE VILLA, LLC,

        Plaintiff/Counter-
        Defendant/Appellee,

v

ARROWOOD HOME RENTALS, LLC, also
known as ARROWOOD MOBILE HOMES, LLC,
and also known as ARROWOOD MOBILE
HOMES SALES,

        Defendant-Appellant,

and

KENNETH C.  BURNHAM,

        Defendant/Counter-Plaintiff.

No.   329180
Oakland Circuit Court
LC No.   2014-142084-CK

---

-1-

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, defendants appeal as of right from an order of the trial court denying their separate motions for summary disposition and granting summary disposition to plaintiff. We uphold the trial court's factual findings underlying that motion, but otherwise conclude that summary disposition was premature and remand to the trial court for further proceedings.

This case called upon the trial court to determine the ownership of four mobile homes located at a mobile home park comprised of more than 700 lots. This park was owned by Lake Villa Oxford Associates, LLC, with a mortgage on the property held by Equity First Michigan II, LLC. The record indicates that Lake Villa Oxford Associates defaulted on its obligations under the mortgage, that Equity First instituted foreclosure proceedings, and that the property was placed in receivership. While the property was in receivership, plaintiff contracted with Equity First to purchase Equity First's rights under that foreclosure action.

Subsequently, with plaintiff's assistance, Equity First entered into a "Mobile Home Purchase and Settlement Agreement" with Lake Villa Oxford Associates, defendant Burnham, and seven entities labeled as "Borrower Affiliate Parties." The settlement agreement identified Burnham as the "Guarantor," Equity First as the "Lender," and Lake Villa Oxford Associates as the "Borrower," and referred to Burnham and Villa Oxford Associates collectively as the "Borrower Parties." Schedule 1 of this agreement explicitly transferred ownership of the mobile home park's real property and 115 mobile homes on that property from the Borrower and Borrower Affiliate Parties to the Lender and, therefore, through the Lender to plaintiff. After listing the homes involved (identified by license number, serial number, age, and manufacturer), Schedule 1 provides a catchall provision that reads as follows:

> Together with all other mobile or manufactured homes owned by Borrower or any *Borrower Affiliate Party* (or Any Affiliate of Borrower or any Borrower Affiliate Party) located on the Property as of the date of this Agreement. [Emphasis added.]

The instant dispute arose when defendant Arrowood attempted to remove four mobile homes from the park after the settlement agreement went into effect and plaintiff refused to allow the removal. The parties do not dispute that the four mobile homes are not listed on Schedule 1 and that Arrowood is not listed as a Borrower Affiliate Party under the settlement agreement. Additionally, the parties do not dispute that Arrowood owned the mobile homes before the settlement agreement became effective.

Nonetheless, plaintiff filed a complaint with the trial court seeking to prove that it was the owner of the four homes pursuant to Schedule 1's "catchall provision" because Arrowood was an affiliate party of Burnham, the Borrower, and the Borrower Affiliate Parties under the settlement agreement. Plaintiff further alleged that defendants breached the agreement by asserting ownership of the homes, and that Burnham breached the warranty he made that no affiliate of the Borrower or a Borrower Affiliate Party owned any mobile home on the property. Burnham filed

-2-

a counterclaim, alleging that plaintiff negligently failed to perform its due diligence under the agreement to ensure that the four mobile homes were included therein, causing him damages by forcing him to defend the instant case. Arrowood also pleaded counterclaims, alleging that plaintiff converted the four mobile homes, that plaintiff intentionally interfered with Arrowood's "ongoing contractual relationship with Lake Villa and Key Bank and US Bank," and that plaintiff was guilty of common law theft.

Eventually, all parties filed summary disposition motions, arguing that the settlement agreement unambiguously established ownership in their favor, thereby precluding other relief. The trial court ruled that the agreement unambiguously established that Arrowood was an affiliate of the Borrower and the Borrower Affiliate Parties, and therefore ownership of the four mobile homes at issue transferred to plaintiff under the agreement. Accordingly, the trial court entered summary disposition in plaintiff's favor and dismissed defendants' counterclaims.

Defendants' arguments on appeal may be summarized as contending that the trial court erred by determining that Arrowood was an affiliate of the Borrower and the Borrower Parties under the settlement agreement and by granting plaintiff's motion for summary disposition, instead of their own.

This Court reviews de novo the grant of summary disposition, *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996), and issues involving contract interpretation, *Ajax Paving Indus, Inc v Vanopdenbosch Constr Co*, 289 Mich App 639, 643; 797 NW2d 704 (2010). Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Under this court rule, a party "may move for dismissal of or judgment on all or part of a claim," MCR 2.116(B)(1), where "[e]xcept concerning the amount of damages, there is no genuine issue concerning any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law, MCR 2.116(C)(10). "If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law." *Franchino v Franchino*, 263 Mich App 172, 181; 687 NW2d 620 (2004). "A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ." *Campbell v Kovich*, 273 Mich App 227, 230; 731 NW2d 112 (2006).

MCR 2.116(G)(4) speaks to how the movant is to argue a (C)(10) motion, and how the nonmoving party must respond:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth

specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

"A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10). The court rule plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial." *Maiden*, 461 Mich at 121. Further, in addition to the identified affidavits, a non-moving party may also respond to a (C)(10) motion by providing "depositions, admissions, or other documentary evidence" that show that there is a genuine factual issue for the trier of fact. MCR 2.116(G)(3)(2).

"A contract must be interpreted according to its plain and ordinary meaning. When the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms." *Ajax Paving Indus*, 289 Mich App at 644 (internal citations omitted). Therefore, "[w]here a contract is to be construed by its terms alone, it is the duty of the court to interpret it . . . ." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003) (internal quotation marks and citation omitted).

Nonetheless, "[i]t is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Id*. A contract is ambiguous "if there is more than one way to reasonably interpret" it. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003). However, "[i]f a contract, even though inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous." *South Macomb Disposal Auth v Mun Risk Mgt Auth*, 207 Mich App 475, 478; 526 NW2d 3 (1994). "[C]ourts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable." *Klapp*, 468 Mich at 467 (internal quotation marks and citations omitted).

Burnham claims that because Arrowood never transferred title to the mobile homes to plaintiff, Section 4.9 of the settlement agreement precludes plaintiff from owning the mobile homes. Section 4.9 is entitled "Title and Possession of Mobile Homes" and states as follows:

> Title to the Mobile Homes shall not pass to Lender until the Certificates of Title or Certificates of Mobile Home Ownership are properly executed and delivered by Borrower Affiliate Parties to Lender, or Lender's designee. Upon execution and delivery of the Mobile Home Certificates of Title or Certificates of Mobile Home Ownership, Lender shall have immediate possession of the Mobile Homes . . . .

In this state, mobile homes are not treated as real property, but rather are generally treated as vehicles unless "affixed to real property in which the owner of the mobile home has the

ownership interest."[1] MCL 125.2330i(1). In this case, the parties do not dispute that Arrowood did not own the real property upon which the homes rested. Accordingly, the homes at issue are treated as vehicles and not as real property. Although a transfer of title to a vehicle generally indicates a transfer of ownership, under the motor vehicle code, MCL 257.1 *et seq.*, one need not transfer title to transfer ownership. See *Botsford General Hosp v Citizens Ins Co*, 195 Mich App 127, 133-134; 489 NW2d 137 (1992). Therefore, that title to the homes did not pass under Section 4.9 of the settlement agreement until the certificates were tendered does not preclude plaintiff from owning the mobile homes.

Similarly, that possession does not pass under Section 4.9 until tender of title does not preclude plaintiff from owning the homes. Possession of personal property is just but one of the incidents of ownership, and a person may own property without possessing it. Accordingly, defendants' failure to transfer the titles to these homes does not mandate the conclusion that Arrowood is the rightful owner.

Next, we conclude that, contrary to defendants' argument otherwise, the settlement agreement unambiguously includes Arrowood as an affiliate of the Borrower and at least three Borrower Affiliate Parties. The settlement agreement defines "Affiliate" broadly:

> "Affiliate" means, as to any specified Person, (a) any Person that directly or indirectly through one or more intermediaries controls or is controlled by or is under common control with that Person, (b) any Person owning or controlling outstanding voting securities of or other ownership interests in that Person, (c) any officer, director, partner, employee or member (direct or indirect and no matter how remote) of that Person, (d) if that Person is an individual, any entity for which that Person directly or indirectly acts as an officer, director, partner, owner, employee or member, (e) any entity in which that Person (together with the members of his or her family if the Person in question is an individual) owns, directly or indirectly through one or more intermediaries an interest in any class of stock (or otherwise beneficial interest in that entity), or (f) any family member (by blood, marriage, adoption or otherwise) of that Person . . . .

The settlement agreement defines "Person" to mean "any individual, sole proprietorship, corporation, general partnership, limited partnership, limited liability company or partnership, joint venture, association, jointstock company, bank, trust, land trust, estate, associate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity." Accordingly, the term "specified person" (not defined in the agreement) refers to those entities listed in the settlement agreement, namely, the Borrower and the Borrower Affiliate Parties.

---

[1] The owner of the mobile home and real property to which it is affixed must also provide an affidavit to the Department of State describing the mobile home and real property. MCL 125.2330i(1)(a).

Under definition (a) of "affiliate," Arrowood is an affiliate of the Borrower or a Borrower Affiliate Party if a common entity controls both Arrowood and either the Borrower or a Borrower Affiliate Party. The settlement agreement defines "control" to mean "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities or other ownership interests, by contract or otherwise."

Burnham averred that he was Arrowood's president. Additionally, he signed the settlement agreement on behalf of himself as Guarantor, the Borrower, and all seven Borrower Affiliate Parties. Thus, Burnham has indicated he was the manager of the Borrower and the president of three of the seven Borrower Affiliates. Burnham's positions as manager or president give him the power to "direct or cause the direction of the management and policies" of those entities, meaning that Burnham controlled the Borrower, three Borrower Affiliate Parties, and Arrowood. Therefore, because Arrowood, the Borrower, and three Borrower Affiliate Parties were controlled by a common entity, Arrowood is an affiliate of the Borrower and three Borrower Affiliate Parties. And, because Arrowood is an affiliate of the Borrower and Borrower Affiliate Parties, the catchall provision in issue unambiguously purports to transfer the four homes owned by Arrowood to the Lender and, therefore, through the Lender to plaintiff.

The parties and the trial court appear to have assumed that if Arrowood was an affiliate under the settlement agreement, the agreement would effectively transfer ownership of Arrowood's four homes to plaintiff. However, Arrowood did not sign the settlement agreement and is not otherwise specifically mentioned in the agreement. " 'It goes without saying that a contract cannot bind a nonparty.' " *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 80; 811 NW2d 4 (2011), quoting *Equal Employment Opportunity Comm v Waffle House, Inc*, 534 US 279, 294; 122 S Ct 754; 151 L Ed 2d 755 (2002).

Nonetheless, a non-signatory of a contract "can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *Id.* at 81. The parties did not address and did not provide any evidence pertaining to any of these theories before the trial court. Accordingly, the trial court's conclusion that the settlement agreement transferred ownership of the four mobile homes to Arrowood, and its summary disposition rulings premised upon that conclusion, were premature.

Therefore, we remand this case to the trial court for a determination of whether Arrowood, as a non-signatory affiliate of the Borrower and three Borrower Affiliate Parties under the settlement agreement, was bound to transfer ownership of the four mobile homes to plaintiff under that agreement. We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto