# STATE OF MICHIGAN

# COURT OF APPEALS

CUSTOM PACK SOLUTIONS, INC.,

      Plaintiff-Appellant,

v

GREAT LAKES HEALTHCARE PURCHASING
NETWORK, INC.,

      Defendant,

and

MEDLINE INDUSTRIES, INC. and
PROFESSIONAL HOSPITAL SUPPLY, INC.,

      Defendants-Appellees.

UNPUBLISHED
February 22, 2018

No. 334815
Kent Circuit Court
LC No. 15-002754-CK

Before: MURPHY, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff, Custom Pack Solutions, Inc. ("CPS"), appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(8) in favor of defendants Medline Industries, Inc. ("Medline") and Professional Hospital Supply, Inc. ("PHS"). This dispute arises out of a distribution agreement among CPS, Medline, and PHS, assigning each firm a role in a supply chain to provide Great Lakes Healthcare Purchasing Network ("GLHPN")[1] with custom procedure trays, which are pre-packed medical supplies. CPS unsuccessfully challenged defendants' termination of the distribution agreement. We affirm.

## I. BACKGROUND

Roosevelt Tillman, owner of CPS, began working with Bill Kelly, a PHS sales representative, in 2012 to help PHS bid on a contract to supply custom procedure trays to

---

[1] GLHPN is not a party to this appeal.

Spectrum Health through its procurement affiliate, GLHPN. PHS, based on the West Coast, wished to expand east of the Mississippi.

Spectrum Health awarded contracts based on a 100-point scale with up to seven points for diversity and inclusion. PHS understood that a relationship with CPS would benefit PHS in the bidding process because CPS was a local, minority-owned business. PHS agreed to provide CPS with training, inventory, and software to assemble the custom procedure trays.

In May 2013, PHS submitted its response to Spectrum Health's request for information about the contract to provide custom procedure trays. PHS stated its intention to partner with CPS. Spectrum Health and GLHPN awarded the contract to PHS on January 10, 2014. They gave PHS the full seven points for diversity and inclusion and additional points for using a local supplier based on PHS's intent to work with CPS.

On January 31, 2014, Medline announced the acquisition of PHS. Medline assured GLHPN that it had no intention of changing PHS's operations, including CPS's management team. CPS alleged that PHS also assured Tillman that the merger would not affect their working relationship.

In April 2014, Medline, PHS, and CPS signed a distribution agreement governing the supply, assembly, and distribution of custom procedure trays to GLHPN. According to the agreement, PHS assembled the trays for CPS, who sold them to Medline, who distributed them to GLHPN. The agreement established that each party acted as an independent contractor and that the agreement did not create a partnership. The agreement contained a merger clause stating that the agreement superseded all prior agreements. CPS alleged that Tillman signed the agreement in reliance on assurances that Medline's acquisition of PHS did not alter CPS's working arrangement with PHS. Tillman believed that the agreement did not alter the "partnership" he had with PHS. In November 2014, PHS sent a letter to CPS and Medline providing 90 days' notice of termination as permitted by the agreement's termination provision.

Between March 2015 and February 2016, CPS filed its original complaint and three amended complaints. Pertinent to this appeal, in the third amended complaint that CPS brought against defendants PHS and Medline, CPS alleged (I) fraudulent inducement and unjust enrichment and (II) partnership in fact. CPS alleged that defendants fraudulently induced Tillman into signing the distribution agreement by proceeding with the bid in partnership with Tillman, then severing ties with CPS after obtaining the contract. CPS further alleged that defendants breached their fiduciary duties to CPS, as a partner in fact, by "dumping" CPS after using it to obtain the contract with GLHPN.

Defendants responded to the complaint by filing a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that CPS did not show that it was fraudulently induced to agree to the integration clause, that CPS did not tender back the amount paid under the agreement, and that the agreement expressly disclaimed a partnership. CPS responded by arguing that fraudulent inducement invalidated the entire contract, that the tender-back rule applies only to settlements and releases, and that the agreement did not affect the parties' preexisting partnership.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(8), rejecting CPS's claims as a matter of law. First, the trial court rejected CPS's partnership claim because the agreement stated that the parties were not partners and extinguished any preexisting partnership the parties may have had. Accordingly, the trial court concluded, defendants terminated the agreement in accordance with the agreement's terms. Next, the trial court rejected CPS's combined fraudulent inducement and unjust enrichment claim because CPS did not tender back the amount paid. The trial court also determined that the terms of the agreement defeated CPS's fraudulent inducement claim and permitted termination of the business relationship.

## II. DISCUSSION

We review a grant of summary disposition de novo. *Urbain v Beierling*, 301 Mich App 114, 121; 835 NW2d 455 (2013). We also review de novo matters of contract interpretation, which are legal questions. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

The trial court limited its grant of summary disposition to MCR 2.116(C)(8).[2] Summary disposition under MCR 2.116(C)(8) is proper if "[t]he opposing party has failed to state a claim on which relief can be granted." "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Urbain*, 301 Mich App at 122 (quotation marks and citation omitted). When a claim turns on a written instrument, that instrument must be attached to the pleading and "is a part of the pleading for all purposes[,]" MCR 2.113(F), including a motion for summary disposition under MCR 2.116(C)(8), *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

The primary goal of contract interpretation is to honor the parties' intent. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998). The unambiguous language of a contract reflects the parties' intent, so the Court interprets the contract as written. *Coates v Bastian Brothers*, Inc, 276 Mich App 498, 503; 741 NW2d 539 (2007).

## A. PARTNERSHIP

CPS first argues that it formed a legal partnership with defendants to bid on the GLHPN contract that exists independently of the distribution agreement that the parties later signed and that CPS reasonably relied on assurances that this partnership would remain intact to sign the distribution agreement. Parol evidence is generally inadmissible to change the written terms of a contract, but it "is admissible on the threshold question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement." *UAW-GM Human Resource Ctr*, 228 Mich App at 492. Parol evidence is admissible to show

---

[2] For this reason, CPS's argument that summary disposition under MCR 2.116(C)(10) is premature because the parties had not yet begun discovery is inapposite.

(1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing. [*Id.* at 493.]

When a contract includes a merger clause, that clause is conclusive, and "parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.' " *Id.* at 502, quoting 3 Corbin, Contracts, § 578, p 411.

Three provisions in the agreement, read together, defeat CPS's argument. First, the distribution agreement establishes the conditions for CPS, PHS, and Medline's fulfillment of the GLHPN contract. Second, the distribution agreement labels each party an independent contractor and states that the agreement does not create a partnership or joint venture among the parties. Finally, the merger clause confirms that the agreement represents the entirety of the relationship among the parties and supersedes all prior agreements. These provisions show that the agreement governs the parties' relationship for the purpose of servicing the GLHPN contract and that the parties were not partners for this purpose, either at the time of the signing of the agreement or before then. The trial court did not err by construing the unambiguous terms of the contract to conclude that the parties were not partners.[3]

CPS maintains that the partnership can coexist with the relationship memorialized in the distribution agreement to service the GLHPN contract because the parties formed a partnership to pursue other business. CPS's argument is flawed because CPS failed to identify what other business arrangement CPS had with defendants independently of this contract. All of CPS's allegations concern the GLHPN contract. CPS and defendants may have discussed the possibility of other business opportunities, but no other concrete business arrangements form the basis of the complaint allegations. Similarly, CPS does not account for the merger clause when it argues that the existence of the partnership predated the distribution agreement. CPS has identified no error in the trial court's conclusion that the parties were not partners.

### B. FRAUDULENT INDUCEMENT AND UNJUST ENRICHMENT

CPS next argues that when it signed the distribution agreement it reasonably relied on Medline's statements that its acquisition of PHS did not alter the parties' working arrangement, which CPS understood to be a partnership. CPS relied on a combined theory of fraudulent inducement and unjust enrichment to invalidate the distribution agreement by arguing fraudulent

---

[3] To the extent that CPS's argument implies that the agreement is incomplete, it does not show how the agreement is facially incomplete, instead relying on defendants' oral representations to argue that it was not complete. Therefore, CPS has identified no basis to consider parol evidence, and the trial court properly limited its analysis to the terms of the agreement.

inducement and to recover damages for unjust enrichment. To demonstrate fraudulent inducement warranting rescission of a contract, the plaintiff must show that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 499; 892 NW2d 467 (2016) (quotation marks and citation omitted).]

Although inadmissible to change the terms of a contract, parol evidence is admissible to show fraud. *Barclae v Zarb*, 300 Mich App 455, 480; 834 NW2d 100 (2013). "[W]hen a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *UAW-GM Human Resource Ctr*, 228 Mich App at 503. The inclusion of a merger clause renders unreasonable a party's reliance "on any representations not included in the" contract. *Id*. at 504.

A merger clause does not foreclose the use of parol evidence to show fraud invalidating the contract in its entirety, but a merger clause calls into question whether reliance on an oral promise that is not memorialized in the agreement is reasonable. For example, in *UAW-GM Human Resource Ctr*, 228 Mich App at 504, this Court determined that the plaintiff's reliance on the hotel representative's assurance that the hotel employees were unionized was unreasonable in light of the merger clause because the agreement contained no corresponding assurance in writing.

Similarly, in this case, the distribution agreement's provision for an independent contractor relationship, not a partnership, contradicts CPS's allegations that the parties were partners. The merger clause renders unreasonable CPS's reliance on defendants' alleged assurance that they would remain partners. Further, CPS does not argue that PHS's termination of the agreement violated the termination provision. Therefore, the trial court did not err by concluding that defendants did not fraudulently induce CPS into entering into the distribution agreement and did not violate the agreement when they provided notice of termination.[4]

CPS's unjust enrichment claim was premised on the success of a fraudulent inducement claim. To prove unjust enrichment, the plaintiff must show "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). An implied contract prevents unjust enrichment but only in the absence

---

[4] Because we affirm the trial court's disposition of CPS's fraudulent enrichment claim on the basis of the terms of the agreement, we need not address whether CPS was required to tender back the amount paid for services rendered.

of an "express contract covering the same subject matter." *Id*. Because CPS has not shown that the distribution agreement was invalid, the agreement precludes an unjust enrichment claim. Likewise, because the distribution agreement defeats CPS's argument that the parties were partners independently of the agreement, CPS's unjust enrichment claim based on the independent partnership also fails.

CPS requests leave to amend the complaint "to include a stand-alone count of unjust enrichment[.]" CPS requested leave to amend the complaint for the first time on appeal, so CPS has forfeited this request. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (noting that this Court "need not review issues raised for the first time on appeal"). Moreover, amendment of a complaint is not warranted when the amendment would be futile. *Franchino v Franchino*, 263 Mich App 172, 189-190; 687 NW2d 620 (2004). The distribution agreement fully governs the business relationship between the parties, so an amended stand-alone unjust enrichment claim would be futile.

In short, CPS signed an agreement that designated CPS, PHS, and Medline independent contractors with respect to their assumed roles in fulfilling the GLHPN contract. The agreement contains a merger clause that defeats CPS's fraudulent inducement claim because CPS's reliance on statements to the contrary was not reasonable. Because the agreement governs the relationship among the parties, PHS's termination notice was valid.

We affirm.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly