LOOKHOLDER *v.* STATE HIGHWAY COMMISSIONER.

1. CONSTITUTIONAL LAW—DUE PROCESS—FAIR TRIAL—FAIR TRIBUNAL.

   A fair trial in a fair tribunal is a basic requirement of due process (US Const, Am 14, § 1; Mich Const 1908, art 2, § 16).

2. SAME—DUE PROCESS—FAIR TRIAL—JUDGES.

   A fair trial, as required by due process, requires not only an absence of actual bias on the part of the judge, but also that no man be a judge in his own case or try cases where he has an interest in the outcome (US Const, Am 14, § 1; Mich Const 1908, art 2, § 16).

3. HIGHWAYS AND STREETS—CONDEMNATION PROCEEDINGS—DISQUALIFICATION—CIRCUIT COURT COMMISSIONER.

   A circuit court commissioner of the county, or acting in the county, in which is located land sought to be condemned for highway purposes may hear the matter of necessity in the event the statutory highway authority is disqualified to hear and determine such matter (CL 1948, § 213.174a).

4. SAME—CONDEMNATION PROCEEDINGS—DUE PROCESS—DISQUALIFICATION OF DEPUTY.

   Conduct of hearing on necessity in condemnation proceedings of land for highway purposes did not result in a denial of due process due to disqualification of person who had been deputized to conduct the hearing by the State highway commissioner because of previous service as an assistant attorney general, where before deputization by the commissioner he had resigned as such assistant (US Const, Am 14, § 1; Mich Const 1908, art 2, § 16).

5. JUDGES—DUE PROCESS—DISQUALIFICATION—ATTORNEY AND CLIENT —ETHICS.

   The fact that an attorney has represented a client with respect to identified subject matter in a proceeding which has come to a definite end, does not itself disqualify him from acting judicially at some later date in a new proceeding involving

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 12 Am Jur, Constitutional Law § 573.
[3-5] 18 Am Jur, Eminent Domain § 315.
[6, 7] 18 Am Jur, Eminent Domain § 232.
[8] 19 Am Jur, Estates § 2.
[9] 18 Am Jur, Eminent Domain § 319.
[10] 18 Am Jur, Eminent Domain § 308.
[11] 18 Am Jur, Eminent Domain § 313.
[12] 18 Am Jur, Eminent Domain § 378.

the same subject matter, even though his former client stands before him in the position of an interested litigant, as ethical considerations do not alone determine questions of due process (US Const, Am 14, § 1; Mich Const 1908, art 2, § 16).

6. EMINENT DOMAIN—LEASEHOLD AS PROPERTY.
A leasehold, and rights derived from a leasehold, constitute property for the taking of which just compensation must be made or secured.

7. SAME—INTEREST IN LAND—LEASEHOLD.
An "interest in land," as that term is used in the highway condemnation act, embraces and includes leasehold interests and rights derived therefrom (CL 1948, § 213.174).

8. WORDS AND PHRASES—INTEREST IN LAND.
"Interest," in common speech in connection with land, includes all varieties of titles and rights, comprehending estates in fee, for life and for years, mortgages, liens, easements, attachments, and every kind of claim to land which can form the basis of a property right.

9. EMINENT DOMAIN—HIGHWAYS AND STREETS—LANDLORD AND TENANT—PRECEDENT NEGOTIATIONS—CONDITION PRECEDENT TO CONDEMNATION PROCEEDINGS.
Lessees of land, sought for State highway purposes, irrespective of the duration or value of their interest, were equally entitled to precedent and good-faith negotiations toward acquisition of their interest, as the lessors; hence, where the State highway commissioner failed to negotiate separately with the lessees, condemnation proceedings to acquire the land were prematurely instituted to the legal detriment of both the lessors and the lessees (Const 1908, art 13, § 2; CL 1948, § 213.174).

10. SAME—CONDEMNATION PROCEEDINGS—COURTS.
It is the duty of courts, when reviewing condemnation proceedings to acquire land for highway purposes, to see that the requirements of constitutionally authorized law are strictly observed as a condition of validity of such proceedings (Const 1908, art 13, § 2; CL 1948, § 213.174).

11. SAME—CONDEMNATION FOR HIGHWAYS—CONSTRUCTION OF STATUTES—JURISDICTION—WAIVER—ESTOPPEL.
The statute authorizing condemnation of interests in land for highway purposes is to be strictly construed, and its jurisdictional requirements must be established in fact and may not rest upon technical waiver or estoppel (Const 1908, art 13, § 2; CL 1948, § 213.174).

12. COSTS—CONDEMNATION PROCEEDINGS—HIGHWAYS AND STREETS.
   No costs are allowed on certiorari by owners of interests in land
   ` sought to be taken for highway purposes upon reversal of
   judgment because proceedings brought were invalid.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted June 6, 1958. (Docket No. 38, Calendar No. 47,523.) Decided September 10, 1958. Rehearing denied October 13, 1958.

Certiorari by Harry Lookholder, David Lookholder, Loren W. Brummit and Edyth M. Brummit against Charles M. Ziegler, State Highway Commissioner, to review condemnation proceedings in the matter of the improvement of State trunk-line highways US-12 and US-131. Writ quashed. Plaintiff appeals. Reversed and remanded for entry of order declaring condemnation proceedings invalid.

*Kenneth A. Fricke,* for plaintiffs Lookholder.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Samuel D. Frane* and *Victor H. Meier,* Assistants Attorney General, for defendant.

BLACK, J. To review condemnation proceedings instituted under PA 1925, No 352, as amended (CL 1948, § 213.171 *et seq.* [Stat Ann and Stat Ann 1957 Cum Supp § 8.171 *et seq.*]), appellants sued out— in the Kalamazoo circuit—certiorari to the State highway commissioner. The writ, following due trial, was dismissed. Appellants are here with the record by application and grant of leave to appeal.

We granted leave for the purpose of reviewing an asserted denial of due process[*] arising from the appointment of an allegedly interested "person" (see section 28 of the act as added by PA 1927, No 92

---

[*] US Const, Am 14, § 1; Mich Const 1908, art 2, § 16.—REPORTER.

[CL 1948, § 213.198 (Stat Ann § 8.199)]) to act in the place and stead of the State highway commissioner, and for the purpose of considering an asserted right of appellants Lookholder, as owners of the involved title in fee, and of appellants Brummit, as term lessees of defendants Lookholder, to separate good faith offers under the statute (CL 1948, § 213.174 [Stat Ann 1957 Cum Supp § 8.174])* prior to and as a condition of validity of the mentioned proceedings.

*First:* It was represented in the application for leave to appeal that the specially deputized "person," in this case former† assistant attorney general Willard L. Mikesell, had appeared as counsel for the State in a previous proceeding, instituted under the same statute, the design of which was condemnation of the same property of appellants. On this hypothesis it was, and now is, asserted that Mikesell was "interested" in the outcome; that he thereby was disqualified to sit and hear judicially, and that due process was denied by Mikesell's determination —which determination was later upheld by the State highway commissioner and next by the circuit court—to proceed over timely objection in the capacity of a special statutory deputy. Thus the spectacle of the attorney general—in the apparent person of his assistant—sitting as a "deputized person" to preside, hear and evaluate the testimony taken or to be taken in a statutory proceeding where he—the attorney general—must and does represent adversary interests of the State, instinctively gave rise to serious question whether a "hearing" of such nature affords due process for those who, by force of the proceeding, are opposed to the State and its chief legal representative.

---

* See pertinent construction of section 213.174 in *State Highway Commissioner* v. *Newstead*, 337 Mich 233.

† We say "former" in view of Mr. Mikesell's resignation from the attorney general's department on February 19, 1956.

The question whether due process is denied, when the judge or tribunal assigned to preside and conduct the requisite hearing has an alleged "interest in the outcome," is occasionally delicate and usually difficult.* The reason becomes apparent on reflective examination of *In re Murchison*, 349 US 133, 136 (75 S Ct 623, 99 L ed 942), wherein the supreme court opened its considered discussion of this phase of due process by saying: "A fair trial in a fair tribunal is a basic requirement of due process." *Murchison* follows *Tumey* v. *Ohio*, 273 US 510 (47 S Ct 437, 71 L ed 749, 50 ALR 1243), wherein the unanimous opinion of the court, written by Chief Justice Taft, led the way in expression of authoritative and modern thought upon the subject. The 2 cases impelled recent readjustment of section 635 (headed "Requirement of Impartiality") of the topic "Constitutional Law," in 12 Am Jur at page 326. See the following new note, appended to the text of said section 635 (page 29 of 1958 pocket supplement):

"A fair trial, as required by due process, requires not only an absence of actual bias on the part of the judge, but also that no man be a judge in his own case or try cases where he has an interest in the outcome. And every procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law."

The only well-defined and manifestly necessitous exception to this rule of due process, that of the case or proceeding where there is no judge or officer not equally disqualified to act (see *Tumey* v. *Ohio*, *supra*), has no place in the case before us. Section

---

* We held, under the act of 1925 in its originally enacted form, that due process is denied when the necessity of taking is not determined judicially (*Hendershott* v. *Rogers*, 237 Mich 338).

4a of the act of 1925, as amended (CL 1948, § 213.174a [Stat Ann 1957 Cum Supp § 8.175]), provides:

"In the event the board or commissioner shall for any reason be disqualified to hear and determine the matter of necessity, as provided in this act, such matter of necessity only shall be heard by a circuit court commissioner of the county in which the property sought to be condemned is located or by a circuit court commissioner acting in such county, as provided by law, and in case any disqualification shall be alleged against any board or commissioner before or during such hearing on necessity, such board or commissioner if they deem such allegation well-founded, may call upon a circuit court commissioner, qualified as hereinbefore provided, to hear the matter and make the determination herein prescribed, and on the day set for hearing a continuance for such purpose to a day certain, may be had if necessary."

Here, assuming for the moment that the specially deputized commissioner (Mr. Mikesell) was disqualified in the name of due process, the requirements of such process easily could have been satisfied by relevant utilization of the very statute under which these proceedings were instituted. As was said in *Tumey* (pages 522, 523 of report): "We are not embarrassed by such considerations here for there were available in this case other judicial officers who had no disqualification either by reason of the character of their compensation or their relation to the village government."

The foregoing is fully explanatory of the salient reason for grant of leave to appeal in this case. However, and since submission here, we have learned that Mr. Mikesell was not in fact an assistant to the attorney general when the present proceedings were instituted (June 4, 1956) or when the hearing in question was conducted June 26, 1956 (the briefs of

all parties are strangely silent on this rather crucial point of fact). Mr. Mikesell, between the occasion of the previous statutory proceedings and institution of the present ones, had resigned his position as assistant to the attorney general.* Consequently, he was not disqualified for reasons relating to due process so far as shown in this record.

There being no claim of disqualification of Mikesell on any other ground and no evidence of "an interest in the outcome" on his part (from and after the date of said resignation), it is ruled that appellants have failed to sustain their contention that the conduct of this hearing and its result denied them due process. The fact that an attorney has represented a client with respect to identified subject matter in a proceeding which has come to a definite end, does not of itself disqualify him from acting judicially at some later date in a new proceeding involving the same subject matter, even though the same party (his former client) stands before him in the position of an interested litigant. Ethics may or may not suggest his course in such an instance. Be that as it may, ethical considerations, *standing alone,* do not determine questions of due process.

In arriving at foregoing conclusions we have not overlooked *New Products Corp.* v. *State Highway Commissioner,* 352 Mich 73. There the related—but not presently applicable—question was whether the State highway commissioner and his deputy were disqualified (p 86) "on the ground that by previous conduct he [the commissioner] had committed himself to the particular project in question." We held as against such assigned point that there was no disqualification.

---

* See 2 Biennial Report of the Attorney General, 1956, vii.

*Second:* The second question, outlined at beginning of this opinion, depends for solution on the following facts:

Appellants Brummit were and are term lessees of one of the 2 parcels of involved and adjacent real estate. They conduct a filling and service station business thereon. The balance of such real estate is owned and possessed outright by appellants Lookholder. Such is used in part for dwelling purposes. Prior to institution of these proceedings the commissioner negotiated exclusively with appellants Lookholder. His final offer to them, for the entire premises and interests sought for highway purposes (including the leasehold of appellants Brummit) was $68,000.* The Brummits were not approached and were offered nothing, presumably on assumption that it was the coerced duty of the 2 lessors and the 2 lessees, on imminent peril of condemnation, to negotiate amongst themselves for the purpose of "whacking up" that which the commissioner had offered the lessors for all.

The attorney general, recognizing that good-faith negotiation toward acquisition by agreement is a condition precedent to valid condemnation proceedings (*State Highway Commissioner* v. *Ottawa Circuit Judge,* 339 Mich 390), seeks to justify the practice of omitting negotiations with these lessees on grounds of convenience and need for summary acquisitive action, supported by citation of what we think are inapplicable cases from other jurisdictions. The argument is not impressive considering the settled rule in Michigan that a leasehold, and rights derived from a leasehold, constitute "property," for the taking of which just compensation must be made or secured (*City of Detroit* v. *C. H. Little Co.,* 141 Mich 637; *In*

---

* Singularly, such was the exact amount awarded below for all rights and interests taken by the commissioner.

*re John C. Lodge Highway,* 340 Mich 254; *In re Opening Leib Street,* 351 Mich 314).

Here the ultimate question is whether the appellant lessees fall within definitive scope of the expression (see section 4 of the act of 1925, as amended; CL 1948, § 213.174 [Stat Ann 1957 Cum Supp § 8.174]) "any person interested in any such property."* We hold, for reasons given in *Little, Lodge,* and *Leib, supra,* and for reason that the word "interest" as applied to land embraces and includes leasehold interests and rights derived therefrom (*In re Reh's Estate,* 196 Mich 210),† that the appellant lessees were and are as much entitled to precedent and good-faith negotiation toward acquisition of their "interest" as were the appellant lessors, and that the State highway commissioner was and is burdened with the duty of attempted good-faith purchase of the Brummit leasehold as a condition of validity of any proceeding looking toward statutory acquisition of such leasehold. Any other construction of the statute would spur to the judicial front another question of due process and probably a separate one addressed to equal protection.

The unwarranted assumption that a term lessee, of property sought to be acquired by eminent domain, is not a "person interested" in such property,

---

* Note that the same expression, in variant yet corresponding phraseology, is employed as needed throughout the act. See sections 6, 9, 10, 13 and 29 of said Act No 352, as amended (CL 1948, §§ 213.176, 213.179, 213.180, 213.183 and 213.199 [Stat Ann 1957 Cum Supp §§ 8.177, 8.180, 8.181, 8.184 and Stat Ann § 8.200]).

† "The general rule is that the word 'interest' is broader and more comprehensive than the word 'title.' It embraces both legal and equitable rights. It covers rights in property less than title thereto, rights different from title, rights which may be enforced, legal rights.

"'Interest, in common speech in connection with land, includes all varieties of titles and rights. When given its plain and natural meaning it comprehends estates in fee, for life and for years, mortgages, liens, easements, attachments, and every kind of claim to land which can form the basis of a property right.' *Union Trust Co. v. Reed,* 213 Mass 199, 201 (99 NE 1093)." (*Ornatowski v. National Liberty Ins. Co. of America,* 290 Mich 241, 248.)

sprouts, we think, from thought that a tenant has no substantial interest in the premises he occupies and that acquisition of the fee includes and accomplishes acquisition of his rights. Such an assumption has no foundation either in the law of property or in the statute under which the commissioner has proceeded. While the duration and value of a tenant's term is not decisive of presence or absence of right on his part to separate negotiations under the statute, it is not out of order to note that term lessees of business property can and sometimes do hold an "interest" which is of even greater value—at the time of negotiation or taking—than that of the fee itself. Here, and for aught this record makes known to the commissioner or to this Court, such indeed may be the case.

Highway condemnation proceedings of necessity are brutal at best. Property and interests in property can be taken, and dispossession speedily effected, on short notice and summary hearing. A great deal of power, easily abused, is thus confided by Constitution and statute to highway commissioners when proceedings are instituted by them "in the official discharge of their duties" (Const [1908], article 13, § 2). Perforce, and when due appeal is made to the courts for review of such proceedings, it is the plain duty of the latter to see that the requirements of constitutionally authorized law are strictly observed as a condition of validity of such reviewed proceedings.* In the performance of that duty, and having upheld the asserted right of these lessees to

---

* Thirty years ago this Court was confronted with claim, made by the State highway commissioner, that a landowner's failure to seasonably "raise the point of no proper effort to acquire" operated as a waiver of such point. Having held that a bona fide distinguished from casual endeavor by purchase is both mandatory and jurisdictional, the Court went on to say: "The statute of eminent domain is to be strictly construed, and its jurisdictional conditions must be established in fact and may not rest upon technical waiver or estoppel." (In re Petition of Rogers, 243 Mich 517, 522.)

precedent separate negotiations under the statute, we are obliged to rule that the proceedings below were prematurely instituted to the legal detriment of appellants Lookholder as well as appellants Brummit. Such ruling calls for judgment accordingly in the court below.

Reversed and remanded for entry of judgment in circuit declaring that the proceedings brought there by certiorari are invalid. No costs.

Dethmers, C. J., and Carr, Kelly, Smith, Edwards, and Voelker, JJ., concurred.

Kavanagh, J., took no part in the decision of this case.