DETROIT INTERNATIONAL BRIDGE COMPANY
v COMMODITIES EXPORT COMPANY

Docket No. 276225. Submitted July 10, 2008, at Detroit. Decided July 22,
2008, at 9:00 a.m.

The Detroit International Bridge Company, which owns and operates
the Ambassador Bridge, brought an action in the Wayne Circuit
Court to condemn land owned by defendants Commodities Export
Company and Walter Lubienski in order to improve bridge access
on the Detroit end of the bridge. The court, Prentis Edwards, J.,
ruled that the plaintiff lacked the power to condemn and granted
the defendants' motion for summary disposition, but denied their
request for attorney fees. The plaintiff appealed, and the defen-
dants cross-appealed.

The Court of Appeals *held*:

1. The trial court did not err by denying the plaintiff's motion
to amend its complaint to include the argument that the condem-
nation power it had been granted in 1921 PA 84 was preserved by
§§ 189 and 192 of 1931 PA 327. Apart from the fact that § 189 was
repealed in 1982, it expressly preserved only those powers that
derived from the constitution, and the condemnation power on
which the plaintiff sought to rely was merely statutory. Further,
§ 192 protected only those rights that had already accrued when
1931 PA 327 was enacted, and the plaintiff had neither a general
accrued right to exercise the power of condemnation at that time
nor a judgment allowing it to condemn the defendants' property.
Accordingly, amending the complaint to include this argument
would have been futile.

2. The plaintiff's claim that it had the power to condemn under
the Railroad Code, MCL 462.101 *et seq.*, is without merit. The
provisions on which the plaintiff relies apply only to those bridge
companies that are engaged in the operation of a railroad, which
the plaintiff is not. The fact that the analogous Canadian act
authorizing the plaintiff's Canadian counterpart contemplated
that the Ambassador Bridge would carry railway traffic is irrel-
evant because the bridge does not currently carry railway traffic
and no such use is being contemplated.

3. The plaintiff does not have the implied power to condemn based on its authority to construct and maintain the bridge because condemnation power must be derived from the constitution or a statute.

4. The doctrine of judicial estoppel did not prevent the defendants from asserting that the plaintiff lacked condemnation power. Although the defendants successfully alleged in a previous case that the plaintiff, as the alter ego of another company, did have condemnation power, the jurisdictional conditions underlying the condemnation power may not be based on technical waiver or estoppel.

5. Denying the defendants attorney fees and costs is an absurd result in light of the fact that the plaintiff explicitly held itself out as an entity with condemnation power and forced the defendants to incur significant expenses to retain their property. There is no basis on which to conclude that the Legislature intended that entities having condemnation power would be liable for paying expenses related to an improper condemnation attempt while entities not having that power would not be liable for paying such expenses. Accordingly, under the absurd-results rule, which the Michigan Supreme Court had disavowed but has since rehabilitated, the defendants were entitled to attorney fees and costs.

Affirmed in part and reversed in part.

1. EMINENT DOMAIN — CONDEMNATION POWER — RAILROAD CODE.

The power of bridge companies to condemn private property under the Railroad Code applies only to those bridge companies that are engaged in the operation of a railroad (MCL 462.101 *et seq.*).

2. COURTS — STATUTORY INTERPRETATION — ABSURD-RESULTS DOCTRINE.

Michigan courts construe statutes to avoid absurd results that are manifestly inconsistent with legislative intent.

*Dykema Gossett* (by *Craig L. John, Mark H. Sutton, Joseph A. Doerr,* and *Steven P. Cares*) and *Seikaly & Stewart PC* (by *Jeffrey T. Stewart*) for the plaintiff.

*Roger E. Craig* and *Kenneth C. Harrison* for the defendants.

Before: METER, P.J., and TALBOT and SERVITTO, JJ.

METER, P.J. Plaintiff appeals as of right the trial court's order granting summary disposition to defendants in this condemnation case. Plaintiff, which owns and operates the Ambassador Bridge connecting Detroit, Michigan, with Windsor, Ontario, had attempted to condemn defendants' land in order to improve access on the Detroit end of the bridge.[1] The trial court concluded that plaintiff did not have the power to condemn. It granted summary disposition to defendants under MCR 2.116(8), but denied defendants' request for attorney fees. In their cross-appeal, defendants argue that the court erred in denying this request. We affirm the grant of summary disposition and reverse the denial of the attorney-fee request. Of particular note is our conclusion that the so-called "absurd-results rule" applies in Michigan.

*Detroit Int'l Bridge Co v American Seed Co*, 249 Mich 289, 293; 228 NW 791 (1930), sets forth background information about plaintiff:

Plaintiff was organized June 20, 1927, under Act No. 84, Pub. Acts 1921 . . ., the corporation code, as a corporation for pecuniary profit, but with nominal capital, for the purpose of "constructing, owning and/or operating a highway bridge across the Detroit River from Detroit, Michigan, to Sandwich,[2] Province of Ontario, Canada."

On August 4, 1927, plaintiff amended its articles to increase its capital stock and to change its corporate purposes to read:

"To construct, own and/or operate a highway bridge across the Detroit River from Detroit, Michigan, to Sandwich, Province of Ontario, Canada, and the approaches thereto.

---

[1] Plaintiff alleges that condemnation is necessary in order for it to comply with the Ambassador Bridge/Gateway Project Agreement, an agreement entered into by plaintiff and the Michigan Department of Transportation for the improvement of access to the bridge. Defendants maintain that plaintiff does not need to condemn the land in order to comply with the agreement.

[2] Sandwich was the prior name of Windsor.

"To maintain and operate such bridge and the approaches thereto for the use of vehicular and pedestrian traffic, and to charge and collect tolls for such use."

Under 1921 PA 84, as amended by 1925 PA 232 and 1927 PA 335, plaintiff had the power to condemn land:

Any corporation organized for the purpose of constructing, owning or operating any highway bridge or tunnel, across or under any river, stream or other waterway forming a part of the boundary between this state and any other state or country, shall, in addition to all other powers by this act conferred, have the power to condemn any and all real estate, or interest therein, or pertaining thereto deemed necessary for the purposes of such corporation, when no mutual agreement can be reached for the purchase thereof, and in which condemnation said corporation shall proceed as in the condemnation of lands or franchises for railroad purposes under chapter one hundred fifty-seven of the compiled laws of nineteen hundred fifteen, as amended. [1927 PA 335, part 2, ch 1, § 2.]

In 1931, the Legislature enacted a new corporation code—1931 PA 327—that replaced 1921 PA 84. 1931 PA 327 expressly repealed 1921 PA 84, 1925 PA 232, and 1927 PA 335, and the replacement statute did not contain a comparable reference to condemnation. However, § 189 of the 1931 act stated:

Every corporation heretofore organized and incorporated under any law of this state, which if now incorporated would be required to incorporate under and subject to this act, shall hereafter be subject to the provisions of this act . . . . *Nothing in this act shall be construed as attempting to deprive any such corporation of any constitutional power, right, privilege or franchise which any such corporation now enjoys.* [Emphasis added.]

Moreover, § 192 of the 1931 act, currently in effect as MCL 450.192, states:

This act shall not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed.

Plaintiff argued below that §§ 189 and 192 of the 1931 act preserved the condemnation power plaintiff had been granted earlier. Plaintiff raised this argument in a motion for leave to file an amended complaint, after the trial court had already granted defendants' motion for summary disposition. In ruling on plaintiff's motion for leave, the trial court stated:

I guess from a procedural standpoint all of the matters that were before this [c]ourt were decided in the [m]otion for [s]ummary [d]isposition, so insofar as the motion is concerned, really, there's nothing before this [c]ourt to amend based on the ruling in the summary disposition motion, so I will deny the motion.

Plaintiff again argues on appeal that §§ 189 and 192 of the 1931 act preserved the condemnation power set forth earlier and additionally argues that the trial court erred in refusing to allow the amendment of the complaint. We disagree.

We review a denial of leave to amend a complaint for an abuse of discretion. *Franchino v Franchino*, 263 Mich App 172, 189; 687 NW2d 620 (2004). Leave to amend may be denied if the amendment would be futile. *Id.* at 189-190. In addition, we review issues of statutory construction de novo. *Rinke v Potrzebowski*, 254 Mich App 411, 414; 657 NW2d 169 (2002).

The rules of statutory construction require the courts to give effect to the Legislature's intent. This Court should first look to the specific statutory language to determine the intent of the Legislature. The Legislature, of course, is

presumed to intend the meaning that the words of the statute plainly express . . . . If . . . the language is clear and unambiguous, the plain and ordinary meaning of the statute reflects the legislative intent and judicial construction is neither necessary nor permitted. [*Id.*]

First, and significantly, we note that § 189 of 1931 PA 327 was explicitly repealed by § 1098 of 1982 PA 162. Accordingly, plaintiff's attempt to rely on this provision to invoke the power of condemnation is unavailing. Even if § 189 had *not* been repealed, however, it would provide no basis for the relief plaintiff seeks. Section 189 stated that "[n]othing in this act shall be construed as attempting to deprive any such corporation of any *constitutional* power, right, privilege or franchise which any such corporation now enjoys." (Emphasis added.) This language is clear and unambiguous and must be applied as written. *Rinke, supra* at 414. The condemnation power granted to plaintiff by way of earlier legislation was merely statutory in nature and was not "constitutional." It was in contrast to certain powers that were in fact granted by the 1908 Michigan Constitution.

Nor does the saving clause cited by plaintiff—MCL 450.192—serve to retain plaintiff's historical power to condemn. As noted in *Hurt v Michael's Food Ctr*, 249 Mich App 687, 691-692; 644 NW2d 387 (2002), "[i]n general, when the Legislature repeals a statute, the right to proceed under the repealed statute is terminated for all future cases." "However, the repeal of a statute does not take away a vested right, which remains enforceable despite the repealer." *Id.* at 692. MCL 450.192 is in accordance with this latter doctrine, stating that the 1931 act "shall not . . . affect any . . . right . . . accrued . . . ."[3] We hold that no accrued or

---

[3] Plaintiff makes no argument that the phrase "accrued right" should be interpreted differently from the phrase "vested right."

vested right is at issue here. As noted in *Lahti v Fosterling*, 357 Mich 578, 589; 99 NW2d 490 (1959): "It is the general rule that that which the [L]egislature gives, it may take away. A statutory defense, or a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it." Plaintiff had no general accrued right to exercise the power of condemnation even after the repeal of the earlier statutes granting it that power. If plaintiff had, at the time of the repeal, already obtained a judgment allowing it to condemn defendants' property, certain rights to that condemnation may have survived the repeal, but that, of course, was not the case here.

Given that plaintiff's arguments regarding §§ 189 and 192 of the 1931 act are unavailing, the amendment of the complaint would have been futile, and thus the trial court did not commit an error requiring reversal by denying the amendment. *Franchino, supra* at 189-190. Although the trial court gave differing reasoning for denying the amendment, we will not reverse a trial court if it reached the right result for an alternative reason. *Netter v Bowman*, 272 Mich App 289, 308; 725 NW2d 353 (2006).

Plaintiff also argued below that it had the power to condemn by virtue of MCL 462.241, a provision of the Railroad Code, MCL 462.101 *et seq*. MCL 462.241 states:

> If a railroad, bridge, or tunnel company,[4] including a non-Michigan railroad company authorized to own and operate a railroad in this state, is unable to agree for the purchase of any real or personal property or franchises

---

[4] In contrast to this reference to "a railroad, bridge, or tunnel company," other portions of the Railroad Code use slightly different language. See, e.g., MCL 462.201(1) ("corporation . . . constructing, operating, and maintaining a railroad, railroad bridge, or railroad tunnel") and MCL 462.247 ("railroad bridge or tunnel company").

required for the purpose of its incorporation, including, but not limited to, yards, terminals, depots, and freight service facilities, it may acquire title to the property in the manner and by the proceedings prescribed in the uniform condemnation procedures act . . . . However, a railroad, bridge, or tunnel company shall not, except for crossing, take the track or right-of-way of any other railroad company.

The trial court rejected plaintiff's reliance on this statute in ruling on defendants' motion for summary disposition. The court stated:

The bridge company next contend[s] that they are [sic] authorized to condemn under the Railroad Code of 1993 . . . . The introduction to that statute says that this is an act to be known as the Railroad Code. References throughout the act refer to railroads, railroad bridges, railroad tunnels, and in some cases there are references to bridges and tunnels.

It's interesting that one of the provisions found at 462.201 indicates that persons may form corporations for the purpose of constructing, operating and maintaining railroads, railroad bridges and railroad tunnels.

I think it's pretty clear that the legislation that we're talking about here was intended to address considerations for railroads, railroad bridges and railroad tunnels and not as being asserted by the [p]laintiff in this case.

Plaintiff argues that the trial court erred in failing to find that it had the power to condemn by virtue of MCL 462.241. We disagree. We review de novo a trial court's decision with regard to a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). The pertinent question is "whether the claim is so clearly unenforceable as a matter of law that no factual development

could establish the claim and justify recovery." *Id.* When a court reviews the motion, "[a]ll factual allegations supporting the claim, and any reasonable inference[s] or conclusions that can be drawn from the facts, are accepted as true." *Id.*

MCL 462.337, another provision of the Railroad Code, states:

> This act shall apply to any individual, partnership, association, or corporation, and their respective lessees, trustees, or receivers, appointed by a court, while engaged in the operation of a railroad within this state, or while owning, leasing, or otherwise having under his or her or their jurisdiction or control the land on which, or adjacent to which, there may be located and operated any railroad track or sidetrack that is a part of or is in any way connected with a railroad.

This provision makes clear that MCL 462.241 does not apply to plaintiff simply because plaintiff is a "bridge company." Instead, for the statute to apply, plaintiff must be "engaged in the operation of a railroad" or must otherwise have a connection with a railroad. MCL 462.337. Plaintiff does not satisfy this requirement. We reject its argument that it falls within the purview of MCL 462.337 because the Canadian act authorizing the counterpart Canadian corporation originally contemplated that the bridge would carry "railway and general traffic . . . ." There is simply no evidence that the bridge currently carries railway traffic or that such a use is currently being contemplated.

Plaintiff additionally argued below that it had the power to condemn by virtue of "implied necessity." The trial court rejected this argument in ruling on defendants' motion for summary disposition, stating, "I can find no authority that would give the bridge company in this case any [implied] authority." Plaintiff contends

that the trial court erred by failing to rule that plaintiff had implied condemnation power. It alternatively contends that the trial court should have held an additional hearing with regard to the issue. We disagree.

Plaintiff cites *City of Lansing v Edward Rose Realty, Inc*, 442 Mich 626, 631-632; 502 NW2d 638 (1993), in which the Supreme Court held that a municipality has no inherent power to condemn and therefore must derive such power from a statute or the constitution "or by necessary implication from delegated authority." Plaintiff appears to argue that *Edward Rose* may be analogized to the instant case[5] and that plaintiff has the "delegated authority" to condemn because its grant of authority to construct and maintain the bridge must, by necessity, include the power of condemnation. We cannot agree with plaintiff's broad proclamation. Indeed, condemnation power must be derived from the constitution or from statutes, see, e.g., *City of Allegan v Iosco Land Co*, 254 Mich 560, 563; 236 NW 863 (1931), and no constitutional provision or statute currently in effect authorizes plaintiff to condemn land. Plaintiff cites no authority for the proposition that implied authority to condemn certain property may be found even in the absence of a law authorizing *some type* of condemnation power. Accordingly, plaintiff has established no basis for reversal or for a remand for an evidentiary hearing.[6]

Plaintiff also argued below that judicial estoppel prevented defendants from asserting that plaintiff

---

[5] It is doubtful that the reference in *Edward Rose* to condemnation power derived by "necessary implication from delegated authority" even applies in this case, because *Edward Rose*, in making that reference, was specifically referring to the powers of local governments. *Edward Rose*, *supra* at 632 n 5.

[6] As noted by defendants, if plaintiff believes it must acquire defendants' land in order to operate the bridge properly, it may seek the enactment of further legislation.

lacked condemnation power because, in an earlier case, defendants, in arguing that plaintiff was the alter ego of another company, had successfully alleged that plaintiff had condemnation power. The trial court, in ruling on defendants' motion for summary disposition, stated that defendants did "not have the authority to confer upon a private company the right to condemn, notwithstanding the assertion of the judicial estoppel theory." Plaintiff contends that the trial court erred in its analysis of the estoppel theory.

Under the doctrine of judicial estoppel, a party that has unequivocally and successfully set forth a position in a prior proceeding is estopped from setting forth an inconsistent position in a later proceeding. *Paschke v Retool Industries*, 445 Mich 502, 509; 519 NW2d 441 (1994). Here, even assuming that defendants' assertion in the prior case regarding plaintiff's condemnation power could be considered unequivocal, we find no basis for reversal. As noted in *In re Petition of Rogers*, 243 Mich 517, 522; 220 NW 808 (1928), the jurisdictional conditions underlying eminent domain power "may not rest upon technical waiver or estoppel." See also *Lookholder v State Hwy Comm'r*, 354 Mich 28, 38 n 8; 91 NW2d 834 (1958), and *State Hwy Comm'r v Jones*, 4 Mich App 420, 427; 145 NW2d 231 (1966). Moreover, in *Detroit Sharpshooters' Ass'n v Hamtramck Hwy Comm'rs*, 34 Mich 36, 37 (1876), the Court stated:

> The rule is well settled, that in all cases where the property of individuals is sought to be condemned for the public use by adverse proceedings, the laws which regulate such proceedings must be strictly followed, and especially that every jurisdictional step, and every requirement shaped to guard the rights and interests of parties whose property is meant to be taken, must be observed with much exactness.

This case provides additional support for the conclusion that plaintiff's estoppel argument is without merit. Reversal is unwarranted.[7]

On cross-appeal, defendants argue that the trial court erred in denying their request for attorney fees and costs. This argument involves statutory interpretation, which, as noted earlier, we review de novo. *Rinke, supra* at 414.

In its complaint for condemnation, plaintiff relied on the Uniform Condemnation Procedures Act, MCL 213.51 *et seq*. That act, in MCL 213.51, defines an "agency" as an entity "authorized by law to condemn property." See MCL 213.51(1)(c), (h), and (j). Additionally, MCL 213.66(2) states:

> If the property owner, by motion to review necessity or otherwise, successfully challenges the agency's right to acquire the property, or the legal sufficiency of the proceedings, and the court finds the proposed acquisition improper, the court shall order the agency to reimburse the owner for actual reasonable attorney fees and other expenses incurred in defending against the improper acquisition.

Plaintiff argued below that if the court rejected its condemnation arguments, it could not be forced to pay attorney fees and other expenses under these statutes because it would not be an entity "authorized by law to condemn property." MCL 213.51(1)(h) and (j). In a brief ruling from the bench, the trial court agreed. Defendants contend that such a result is absurd and that an award of attorney fees and expenses is warranted here. We agree with defendants.

---

[7] In a supplemental brief, plaintiff cites *Detroit v Ambassador Bridge Co*, 481 Mich 29; 748 NW2d 221 (2008), which was decided after the trial court's ruling. Plaintiff argues that this opinion supports the conclusion that plaintiff has condemnation power. However, that case dealt with whether plaintiff is exempt from zoning regulations and is not germane to whether plaintiff has the statutory or constitutional authority to condemn property.

It is true that we have concluded in this opinion, as did the trial court in its opinion below, that plaintiff is not authorized by law to condemn property. However, to use these opinions as a basis to deny attorney fees and costs to defendants would be absurd, when plaintiff explicitly held itself out as an entity with condemnation power and forced defendants to incur significant expenses in order to retain their property. Historically, Michigan followed the absurd-results rule, which dictates that a statute "should be construed to avoid absurd results that are manifestly inconsistent with legislative intent . . . ." See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 110-112; 718 NW2d 784 (2006) (KELLY, J.). In *People v McIntire*, 461 Mich 147, 155-156 n 2; 599 NW2d 102 (1999), the Michigan Supreme Court retreated from this doctrine and indicated that a statute must be applied literally even if the application leads to an absurd result. Several years later, however, a majority of Supreme Court justices repudiated that holding in *Cameron, supra* at 79 (MARKMAN, J.), 103-104 n 12 (CAVANAGH, J.), 104 n 1 (WEAVER, J.), 109 (KELLY, J.). As noted in *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001), if the Supreme Court discusses and decides an issue germane to a controversy, even if it is not decisive of the controversy, the decision constitutes binding precedent. "A decision of the Supreme Court is authoritative with regard to any point decided if the Court's opinion demonstrates application of the judicial mind to the precise question adjudged, regardless of whether it was necessary to decide the question to decide the case." *Id.* (citation and quotation marks omitted). Accordingly, we accept the conclusion of Justices MARKMAN, CAVANAGH, WEAVER, and KELLY as authoritative.[8]

---

[8] We are aware that this Court, in opinions issued after *Cameron*, has cited *McIntire* in concluding that the absurd-results rule does not apply in Michigan. See *United States Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass'n*, 274 Mich App 184, 202-203; 731 NW2d 481

Therefore, to paraphrase Justice MARKMAN in *Cameron*, *supra* at 80, a statute need not be applied literally if no reasonable lawmaker could have conceived of the ensuing result. Here, there is simply no basis on which to conclude that the Legislature intended that (1) an entity having the power to condemn would be liable for paying expenses related to an improper condemnation attempt, but (2) an entity *not* having the power to condemn would *not* be liable for paying expenses related to an improper condemnation attempt, even though that entity held itself out as having the power of condemnation. Such a result would be patently absurd and "unthinkable." *Id.* at 84 (MARKMAN, J.) (citation and quotation marks omitted). As noted in *Escanaba & L S R Co v Keweenaw Land Ass'n, Ltd*, 156 Mich App 804, 814-815; 402 NW2d 505 (1986), property owners may not be forced to suffer because of an action that they did not initiate and that endangered, through condemnation proceedings, their right to private property. Defendants were entitled to attorney fees and costs under MCL 213.66(2).

Affirmed in part, reversed in part, and remanded for further proceedings related to attorney fees and costs. We do not retain jurisdiction.

---

(2007), lv granted 481 Mich 862 (2008), and *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569; 753 NW2d 265 (2008); see also *Cairns v East Lansing*, 275 Mich App 102, 118; 738 NW2d 246 (2007) (absurd-results rule is inapplicable "in those circumstances in which a statute is unambiguous"). However, none of these opinions cites or discusses *Cameron*. Moreover, *United States Fidelity* relied in large part on *Decker v Flood*, 248 Mich App 75, 84; 638 NW2d 163 (2001), and *Cairns* relied in large part on *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 207; 725 NW2d 84 (2006). Both *Decker* and *Taylor* were issued before *Cameron*. Under these circumstances, the applicable portions of *United States Fidelity*, *Cairns*, and *Kimmelman* are not binding on us under MCR 7.215(J)(1).