*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN FRANCIS DAVIS,

        Defendant-Appellant.

UNPUBLISHED
February 5, 2019

No. 341621
Ingham Circuit Court
LC No. 17-000406-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD MAGNANT,

        Defendant-Appellant.

No. 341627
Ingham Circuit Court
LC No. 17-000407-FH

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. The majority's recitation of the facts is accurate. However, I conclude that, for several reasons, the district court abused its discretion by binding defendants over for trial. I would therefore reverse the circuit court's orders.

## I. STANDARD OF REVIEW

This Court effectively reviews de novo a circuit court's decision on a motion to quash a bindover. *People v Harlan*, 258 Mich App 137, 144-145; 669 NW2d 872 (2003); *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). We therefore review the district court's ultimate decision whether to bind over a defendant for an abuse of discretion, but we review any underlying questions of law de novo. *People v Flick*, 487 Mich 1, 9; 790 NW2d 295

(2010). "Whether conduct falls within the scope of a penal statute is a question of statutory interpretation" and therefore reviewed de novo. *Id*. at 8-9. Review of a bindover decision entails consideration of the entire record. *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013).

An abuse of discretion occurs where the lower court's decision falls "outside the range of principled outcomes." *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018). This standard recognizes that there may "be no single correct outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). However, an abuse of discretion necessarily occurs if a trial court's decision is based on an error of law. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). An abuse of discretion also necessarily occurs if the trial court fails or refuses to exercise its discretion. *People v Merritt*, 396 Mich 67, 80; 238 NW2d 31 (1976).

The fundamental goal of statutory interpretation is to give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159-160; 645 NW2d 643 (2002). We may not inquire into the wisdom or fairness of a statute or statutory scheme. *Smith v Cliffs on the Bay Condo Ass'n*, 463 Mich 420, 430; 617 NW2d 536 (2000), abrogated on other grounds in *Jones v Flowers*, 547 US 220; 126 S Ct 1708; 164 L Ed 2d 415 (2006). We may also not depart from the literal language of a statute merely because the result would be absurd. *People v McIntire*, 461 Mich 147, 155-159; 599 NW2d 102 (1999) (internal quotation omitted). However, where construction of a statute is necessary, any construction should avoid an absurd or unjust result to the extent possible.[1] See *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). A statute may be found ambiguous on its face if it is susceptible to multiple interpretations, and a superficially clear statute may become ambiguous when considered in context of other statutes. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997).

## II. STANDARD FOR BINDOVER

"To bind a criminal defendant over for trial in the circuit court, the district court must find probable cause to believe that the defendant committed a felony, which requires sufficient evidence of each element of the crime charged, or from which the elements may be inferred, to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *Shami*, 501 Mich at 250-251 (footnote citations and internal quotations omitted). The examining magistrate may evaluate the credibility of any witnesses. *People v Moore*, 180 Mich App 301, 309; 446 NW2d 834 (1989). However, the prosecutor need not prove guilt beyond a reasonable doubt; rather, any conflicts or doubts must be resolved by the trier of fact. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003).

---

[1] It is not entirely clear whether there is a level of absurdity at which the "absurd result rule" may still apply in Michigan. See *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 674-675; 760 NW2d 565 (2008). Fortunately, we need not resolve that issue here.

Defendants were charged with violating two provisions of the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq*. Specifically, the alleged crime is a violation of MCL 205.428(3), which provides:

> A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes, tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more, 3,000 or more counterfeit cigarettes, 3,000 or more counterfeit cigarette papers, 3,000 or more gray market cigarettes, or 3,000 or more gray market cigarette papers is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both.

Defendants allegedly transported cigarettes "contrary to this act" because they lacked licenses mandated by MCL 205.423(1), which provides:

> Beginning May 1, 1994, a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so. A license granted under this act is not assignable.

It is not disputed that the trailer attached to the vehicle contained more than the requisite number of cigarettes, and neither defendants nor their employer, the Keweenaw Bay Indian Community (KBIC), possessed a license.[2] The prosecution agreed to require a *mens rea*, but defendants challenge the scope of the *mens rea* required and whether the above provisions apply to them at all.

### III. PURPOSE OF THE TPTA

The necessary starting point is the purpose of the TPTA. The TPTA's preamble provides, in relevant part, that its purpose is:

> to provide for a tax upon the sale and distribution of tobacco products; to regulate and license . . . transportation companies, transporters, and retailers of tobacco products; to prescribe the powers and duties of the revenue division and the department of treasury in regard to tobacco products; to provide for the administration, collection, and disposition of the tax; . . . to prescribe penalties and provide remedies for the violation of this act[.] [1993 PA 327.]

"Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v City of East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991) (citation omitted); see also *Shami*, 501 Mich at 251-252. The preamble is

---

[2] There is apparently an ongoing dispute between Michigan, KBIC, and the federal government whether KBIC can be required to obtain a license under the TPTA. That issue is not before us, and I do not believe it would be relevant to this appeal in any event.

consistent with MCL 205.427a, which provides, in relevant part, that "[i]t is the intent of this act to impose the tax levied under this act upon the consumer of the tobacco products by requiring the consumer to pay the tax at the specified rate." MCL 205.427a. Thus, the TPTA "is at its heart a revenue statute, designed to assure that tobacco taxes levied in support of Michigan schools are not evaded." *Value, Inc v Dep't of Treasury*, 320 Mich App 571, 577; 907 NW2d 872 (2017) (internal quotations omitted).

The above discussion is critical, because to the extent there is ambiguity in any particular provision within the TPTA, that ambiguity must be resolved in favor of furthering the purposes of the act. This Court has previously discussed such a situation in the context of a "retailer." This Court observed that a "retailer" was defined as including "a person," and therefore could apply to discrete individuals. *People v Assy*, 316 Mich App 302, 310-311; 891 NW2d 280 (2016). However, when read in context, this Court concluded that the definition of a "retailer" was not intended to apply to low-level employees, but rather individuals with some degree of meaningful control over an operation. *Id*. This Court's conclusion is also consistent with the underlying purpose of the TPTA.

In the instant case, the word "transporter" is also defined as including "a person . . . transporting in this state, a tobacco product . . . " MCL 205.422(y). As was the case in *Assy*, a discrete individual could, under appropriate circumstances, be prosecuted under the TPTA. However, as was also the case in *Assy*, when read in in context, the Legislature clearly intended to constrain "transporters" to a more limited class of individuals.

Notably, *Assy* first considered how the relevant terms would be used "in ordinary speech." *Assy*, 316 Mich App at 310. Possession specifically "*as a . . . transporter*," MCL 205.423(1) (emphasis added), in ordinary speech, suggests that transportation is a more primary function than merely serving as an employee. Additionally, an applicant for a license is required to have "a minimum net worth of $25,000.00," MCL 205.423(6)(a), further suggesting that low-level employees are not expected to be licensed. Finally, the Legislature has mandated that "[e]xcept for transportation companies, each place of business shall be separately licensed," and that licenses "shall be prominently displayed on the premises covered by the license." MCL 205.423(2). A "place of business" is "a place where a tobacco product is sold or where a tobacco product is brought or kept for the purpose of sale or consumption, including a vessel, airplane, train, or vending machine." MCL 205.422(p). These provisions strongly imply that licensure is, much like the situation in *Assy*, linked to some degree of meaningful control.[3]

---

[3] The majority accurately notes that the definition of "retailer" at issue in *Assy* does not perfectly parallel the definition of "transporter" here. I believe the majority's analysis overlooks the context and clear intent of the TPTA. " '[T]he meaning of statutory language, plain or not, depends on context.' " *People v Vasquez*, 465 Mich 83, 89; 631 NW2d 711 (2001), quoting *King v St Vincent's Hosp*, 502 US 215, 221; 112 S Ct 570; 116 L Ed 2d 578 (1991) (MARKMAN, J.). Furthermore, even if this was a "close call," MCL 205.428(3) imposes a criminal penalty, and "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v United States*, 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971); see also *People v*

When read in context, MCL 205.428(3) and MCL 205.423(1) indicate that low-level employees are not required to be licensed and are not truly engaging in "transportation" within the meaning of the TPTA. Alternatively, the statutes are ambiguous regarding the class of persons who can be transporters. Construing the statutes as exempting low-level employees would be most consistent with the intent and spirit of the TPTA. Prosecuting ministerial agents like defendants would not further the goal of ensuring tax revenue is properly collected from the ultimate consumers of tobacco products. As a practical matter,[4] the only entity truly acting *as a transporter* is defendants' employer and the registered owner of the vehicle and trailer: KBIC. The purpose of the TPTA would have been served by pursuing charges against KBIC.[5] Pursuing KBIC's low-level employees[6] not only fails to serve the purposes of the TPTA, but amounts to an overreach that makes a mockery of both the Legislature's intent and fundamental justice.

## IV. ELEMENTS OF THE CHARGED OFFENSE

### A. GENERAL INTENT

Presuming the TPTA permits charging a mere low-level employee under MCL 205.428(3), the next issue is the extent and nature of any *mens rea* requirement. The parties agree that a *mens rea* is required, but dispute the scope of that requirement.

There are few circumstances under which the courts may depart from the literal language of a penal statute. One of those circumstances is inferring that the Legislature intended to include a *mens rea* element without expressly drafting one. See *People v Quinn*, 440 Mich 178, 185-195; 487 NW2d 194 (1992). The TPTA does not codify a common law crime, so we may

---

*Bergevin*, 406 Mich 307, 311-312; 279 NW2d 528 (1979). "If there is doubt with regard to whether the act charged is embraced in [a statutory] prohibition, that doubt is to be resolved in favor of the defendant." *People v Sartor*, 235 Mich App 614, 623; 599 NW2d 532 (1999).

[4] Courts look to the substance of matters rather than superficialities. *Hurtford v Holmes*, 3 Mich 460, 463 (1855); *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958); *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). Furthermore, the prosecutor admitted at oral argument that, as is readily apparent, defendants were mere "mules."

[5] This would remain the case even if it is ultimately determined that Michigan cannot subject KBIC to the TPTA.

[6] Several jurisdictions have observed that no doctrine of "respondeat inferior" exists. See, e.g., *Coleman v Houston Independent School Dist*, 113 F 3d 528, 534-535 (CA 5, 1997); *Davis v Hoffman*, 972 F Supp 308, 314 (ED Penn, 1997); *Speer v Taira Lynn Marine, Ltd, Inc*, 116 F Supp 2d 826, 830 (SD Tex, 2000); *Grubb v Smith*, 523 SW3d 409, 426 (Ky, 2017); *Thede v Kapsas*, 386 Ill App 3d 396, 401; 897 NE2d 345 (2008). Cases from other jurisdictions are merely persuasive. *People v Stone*, 269 Mich App 240, 245; 712 NW2d 165 (2005). However, I have found no Michigan authority suggesting that an agent may be held strictly liable for the misconduct of a principal, and I would not create that authority now.

consider various factors to determine whether the Legislature intended to include a *mens rea* element, including:

> (1) the statute's legislative history or its title, (2) guidance to interpretation provided by other statutes, (3) the severity of the punishment provided, (4) the severity of potential harm to the public, (5) the opportunity to ascertain the true facts, and (6) the difficulty encountered by prosecuting officials in proving a mental state. [*Id.* at 190 n 14 (citing LaFave & Scott, Criminal Law (2d ed), § 3.8, pp 244-245).]

Stipulations of law are not binding on the courts. *In re Finlay Estate*, 430 Mich 590, 595-596; 424 NW2d 272 (1988). Consequently, the parties' agreement that a *mens rea* element exists does not obviate the need for us to make that determination in the first instance.[7]

By default, the courts will presume that a penal statute imposes a general intent requirement unless it is clear that the Legislature intended to omit such a requirement. *People v Janes*, 302 Mich App 34, 45-46; 836 NW2d 883 (2013). Public welfare laws are a notable exception. *Quinn*, 440 Mich at 187; *Janes*, 302 Mich App at 46-47. However, as discussed, MCL 205.428(3) is a revenue provision, not a public welfare provision. Indeed, the entirety of the TPTA is intended to counteract a specific form of tax evasion. See *People v Nasir*, 255 Mich App 38, 42-43; 662 NW2d 29 (2003) (discussing MCL 205.428(6)). As with the statute at issue in *Nasir*, the immediate harm from a violation of MCL 205.428(3) "is not the type of immediate harm to the public welfare that is common to many strict-liability offenses." *Id.* at 45.

The United States Supreme Court has observed that many statutes lacking a *mens rea* requirement carry relatively light penalties, and a harsh penalty suggests that a *mens rea* is required. *Staples v US*, 511 US 600, 616-619; 114 S Ct 1793; 128 L Ed 2d 608 (1994). A felony cannot ever be considered a light penalty, irrespective of the length of the ensuing sentence or amount of the ensuing fine. In contrast to a misdemeanor, a felony on one's record will be a potentially catastrophic blight for the rest of one's life, strongly suggesting a *mens rea* element. See *People v Olson*, 181 Mich App 348, 350-353; 448 NW2d 845 (1989); see also *People v Pace*, 311 Mich App 1, 12; 874 NW2d 164 (2015).

---

[7] The parties and the trial courts placed considerable importance on *People v Shouman*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2016 (Docket No. 330383), which touched on whether MCL 205.428(3) includes a *mens rea* element. *Shouman* is unpublished and therefore not binding, although it may be considered persuasive. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). Furthermore, to the extent *Shouman* commented on a *mens rea* requirement, it did so after emphasizing that it did not actually need to reach the issue. Consequently, the pertinent discussion in *Shouman* is both non-binding and dicta. If either trial court believed itself bound by *Shouman*, it committed an abuse of discretion per se. *Merritt*, 396 Mich at 80; *Ronnisch*, 499 Mich at 552. As will be discussed, I also believe *Shouman* was wrong.

Proving state of mind is always a challenge, but I do not believe doing so would be exceptional here. See *Nasir*, 255 Mich App at 45. The prosecution asserts that it is unlikely for ordinary persons to drive around with more than 3,000 cigarettes or $250.00 worth of tobacco. See *Id*. at 44-45. I presume the reasonableness of that assertion. Nevertheless, the severity of the penalty, the nature of the crime, and the purpose of the TPTA overwhelmingly show that the Legislature did not intend to dispense with the traditional *mens rea* requirement for felonies.[8]

## B. SPECIFIC INTENT

Defendants argue that MCL 205.428(3) carries a specific intent element in addition to a general *mens rea* element. Defendants base their argument on the phrase "contrary to this act" in MCL 205.428(3). Defendants contend that this phrase requires knowledge that the transportation occurred in violation of the TPTA. In other words, defendants argue the statute requires (a) knowledge that they were transporting cigarettes, *and* (b) knowledge that they were doing so without a required license. In contrast, the prosecution argues the statute requires (a) knowledge *only* that they were transporting cigarettes, and (b) factually doing so without a required license. The prosecution's construction is therefore partially strict liability. As the majority accurately summarizes, "the question is whether the intent of 'knowingly,' which is not expressly in the act, applies to just the 'possession of cigarettes' or to both 'the possession of cigarettes' and 'contrary to the act.' "

The distinction between general intent and specific intent is simple in theory, albeit difficult to apply in practice: general intent requires only the intent to do the physical act itself, whereas specific intent requires an additional mental state beyond what is necessary to commit the physical act. *People v Langworthy*, 416 Mich 630, 638-639, 639 n 9; 331 NW2d 171 (1982). The common law *mens rea* presumption is only of general intent, based on the general rule that ignorance or a mistake of law is not a defense to a crime. See *Cheek v US*, 498 US 192, 199-200; 111 S Ct 604; 112 L Ed 2d 617 (1991). Nonetheless, especially concerning voluminous and convoluted statutory schemes such as tax laws, statutes might be construed as requiring a defendant to have voluntarily and intentionally violated a known legal duty. *Id*.

As discussed, the TPTA is a revenue statute, not a public welfare law. As also discussed, prosecuting low-level employees who have no meaningful control of the transportation operations is contrary to the fundamental purposes of the TPTA. However, *if* low-level employees can be subjected to felony prosecutions for merely doing their jobs, the above general intent discussion applies with equal force to *all* elements of the crime. In other words, such a prosecution could only be fundamentally fair if defendants actually knew that what they were

---

[8] The prosecution is therefore incorrect to the extent it asserts that MCL 205.428(3) is really a strict liability offense, to which it has agreed to append a *mens rea* requirement as a matter of grace rather than entitlement. Likewise, to the extent *Shouman* suggests that MCL 205.428(3) should be considered a strict liability offense, *Shouman* was wrong.

doing was unlawful. Therefore, defendants must have known both that they were transporting cigarettes, and at least generally that they were doing so in violation of the TPTA.[9]

## V. KNOWLEDGE BY DEFENDANT DAVIS

Irrespective of the above, I would find that the district court erred in binding defendant Davis over on the facts.

A knowledge requirement in a statute does not include constructive knowledge, unless the Legislature included a statutory phrase like "should have known." *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 197-198; 694 NW2d 544 (2005). Actual knowledge may always be proven by circumstantial evidence. *Id*. at 198-200. Nevertheless, state of mind "may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998); see also *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996); and *Skinner v Square D Co*, 445 Mich 153, 163-167; 516 NW2d 475 (1994). It is well established that mere suspicion does not establish probable cause to bind over a defendant. See *People v Fairey*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 333805, slip op at pp 3-4).

Here, there is simply *no* evidence that Davis had any knowledge of the contents of the trailer. The prosecution's assertion that Davis must have known because there were a lot of cigarettes is an impermissible imputation of constructive knowledge. The prosecution also infers that Davis's mention of "chips" must have been a reference to cigarettes, and Davis's invitation to the police to look in the trailer was a concession that he had been caught fair and square. These inferences about what Davis may have meant are pure guesswork. No evidence in the record permits any reasonable inference of knowledge by Davis. Therefore, even under the prosecution's construction of the TPTA, the trial court abused its discretion by binding Davis over for trial.

## VI. DUE PROCESS

Defendants finally argue that the statute is unconstitutionally vague. In light of the above discussion, I do not believe I need to reach this issue. However, the majority's reasoning suggests that defendants should somehow be aware that *they* might be committing a crime simply because their *employer* might lack a license. Neither Michigan nor any other jurisdiction recognizes a doctrine of "respondeat inferior" as far as I can determine, and I would not adopt such a complete inversion of well-established agency law here.

---

[9] Defendants concede that they need not have known that they were committing a crime, or the specific details of how they were in violation of the TPTA. Rather, they contend that they need only have a general awareness that some provision of the TPTA was being contravened. This concession reasonably balances fundamental fairness, the purposes of the TPTA, and the need for realistic law enforcement. However, it is not necessary to reach that question in this appeal.

## VII. CONCLUSION

The district court erred as a matter of law by binding defendants over. The TPTA requires defendants prosecuted under MCL 205.428(3) to have knowledge of each element of the offense. The prosecution overreached and violated the spirit and intent, if not the letter, of the TPTA by seeking to prosecute low-level employees for what is really a wrong committed by their employer. In any event, the district court abused its discretion by finding that Davis knew even that there were cigarettes in the trailer. For any and all of these reasons, I would reverse.

/s/ Amy Ronayne Krause